EXHIBIT A

*CPX*

ORIGINAL

1  HOWARTH & SMITH
   DON HOWARTH (SBN 53783)
2  dhowarth@howarth-smith.com
   SUZELLE M. SMITH (SBN 113992)
3  ssmith@howarth-smith.com
   PAULEEN TRUONG (SBN 317914)
4  ptruong@howarth-smith.com
   523 West Sixth Street, Suite 728
5  Los Angeles, California 90014
   Telephone: (213) 955-9400
6  Facsimile: (213) 622-0791

7  Attorneys for Plaintiffs

8

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10         FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

11  ANDREW VON OEYEN, an individual;       )  CASE NO. **19STCV04409**
    EMMANUEL VILLAUME, an individual;      )
12  DAWN ERICSON, individually and as Trustee of )  **COMPLAINT FOR DAMAGES AND**
    the DAWN NAVARRO ERICSON TRUST;        )  **INJUNCTIVE RELIEF:**
13  DOMINQUE NAVARRO, an individual; JACK  )
    SILVERMAN, an individual; CLAIRE       )       1. **NEGLIGENCE AS TO SCE**
14  SILVERMAN, an individual; MARIEL       )          **DEFENDANTS**
    SANDOVAL. individually and as parent and )     2. **NEGLIGENCE AS TO BOEING**
15  natural guardian of STELLA BELLE       )          **DEFENDANTS**
    SANDOVAL. a minor; CLIFF HIRSCH, an    )       3. **INVERSE CONDEMNATION**
16  individual; GLADYS HIRSCH, an individual; )    4. **PUBLIC NUISANCE**
    ISHC LOMPOC, LLC, a California limited  )       5. **PRIVATE NUISANCE**
17  liability company; PAUL ROTHBARD, an    )       6. **TRESPASS**
    individual; and CHELSEA SEGAL, an individual; )  7. **VIOLATION OF PUBLIC**
18                                          )          **UTILITIES CODE § 2106**
                  Plaintiffs,              )       8. **VIOLATION OF HEALTH &**
19                                          )          **SAFETY CODE § 13007**
           vs.                              )       9. **VIOLATION OF HEALTH &**
20                                          )          **SAFETY CODE § 13008**
    SOUTHERN CALIFORNIA EDISON              )      10. **PREMISES LIABILITY**
21  COMPANY; EDISON INTERNATIONAL;          )
    THE BOEING COMPANY; and DOES 1          )  **DEMAND FOR JURY TRIAL**
22  through 100, inclusive,                 )
                                            )
23                Defendants.              )

24  ///

25  ///

26  ///

27  ///

28  ///

---

COMPLAINT

Exhibit A, Page 6

Plaintiffs, by their attorneys, complaining of Defendants, allege for their Complaint as follows:

## I.     INTRODUCTION

### THE WOOLSEY FIRE

1.     In or around the afternoon of November 8, 2018, a fire was ignited in the County of Los Angeles in the area of the Santa Susana Field Laboratory.[1] The fire burned for thirteen days across 96,949 acres, destroying at least 1,643 structures, damaging at least 341 other structures, causing three firefighter injuries, causing fire-related and smoke-related injuries to thousands of residents, and killing three civilians.[2] The fire forced the evacuation of at least 105,000 homes, displacing an estimated 295,000 people, many of whom are now homeless through no fault of their own.[3] Plaintiffs are individuals, homeowners, and business owners in Malibu, Los Angeles County, who suffered devastating losses and injuries, and who seek just compensation, damages and injunctive relief against SOUTHERN CALIFORNIA EDISON, EDISON INTERNATIONAL, THE BOEING COMPANY, and DOES 1 through 100 (collectively, "Defendants"), jointly and severally, as set forth herein.

### SOUTHERN CALIFORNIA EDISON, EDISON INTERNATIONAL, AND THE BOEING COMPANY

2.     On information and belief, SOUTHERN CALIFORNIA EDISON ("SCE") and/or EDISON INTERNATIONAL (collectively, the "SCE Defendants") and/or THE BOEING COMPANY and/or its subsidiaries (the "BOEING Defendants") were substantial factors causing the ignition of the Woolsey Fire.

3.     Plaintiffs allege, on information and belief, that the Woolsey Fire ignited on or near to the Santa Susana Field Laboratory, Bravo Road, Brandeis, California, 93064 (the "SSFL"), which is property of the BOEING Defendants,[4] and on or near to the Chatsworth Substation near E

---

[1] Jaclyn Cosgrove, *Firefighters' fateful choices: How the Woolsey fire became an unstoppable monster*, L.A. TIMES (Jan. 06, 2019, 3:00 AM), https://www.latimes.com/local/lanow/la-me-woolsey-resources-20190106-htmlstory.html.
[2] *Woolsey Fire Incident Update*, CTY. OF L.A. FIRE DEP'T (Nov. 25, 2018, 12:00 PM), https://www.fire.lacounty.gov/woolsey-fire-incident.
[3] *Some Malibu Evacuation Orders Lifted as Firefighters Increase Woolsey Fire Containment*, NBC L.A. (Nov. 14, 2018, 2:50 AM), https://www.nbclosangeles.com/news/local/Malibu-Woolsey-Fire-Evacuations-Lifted-500461951.html.
[4] Cosgrove, *supra* note 1.

1    Street/Alfa Road Unincorporated Area of Ventura County, which is designed, engineered, installed,

2    constructed, built, used, maintained, inspected, repaired, replaced, managed, owned and/or operated

3    by the SCE Defendants.[5]

4        4.    Reported events occurring at or around the time of the ignition cause Plaintiffs to

5    allege, on information and belief, that the ignition of the Woolsey Fire originated from and was

6    caused by electrical infrastructure, including but not limited to transmission and/or distribution

7    cables, wires and/or lines, antennas, circuits, circuit breakers, conductors, guy wires, insulators, lead

8    wires and/or "jumpers," lightning arrestors, poles, structures, substations, terminals, transformers,

9    and reclosers (hereafter, "Electrical Equipment") designed, engineered, installed, constructed, built,

10   used, maintained, inspected, repaired, replaced, managed, owned and/or operated by the SCE

11   Defendants and/or the Boeing Defendants on or near the SSFL.

12       5.    For example, on November 8, 2018, Paul Pimentel, Senior Manager of SCE,

13   reported to the California Public Utilities Commission ("CPUC") that an Electric Safety Incident

14   had occurred near E Street/Alfa Road Unincorporated Area of Ventura County.[6] The report stated

15   that "the Big Rock 16 kV circuit out of Chatsworth Substation relayed at 2:22 p.m.," meaning that a

16   circuit breaker had activated in response to at least one abnormal operating condition, such as over-

17   current.[7] The Chatsworth substation is located within the SSFL and was built to provide electricity

18   for the SSFL nuclear reactor.[8]

19       6.    At or around 2:24 p.m. on November 8, 2018, just two minutes after the relay, the

20   active flames of the Woolsey Fire were reported "in the area of Woolsey Canyon Road and Bang

21   and Black Canyon roads."[9] Wildfires, like the Woolsey Fire, can and do spread with terrifying

22   velocity depending on the wind, topography, and vegetation.

23   ///

---

24   [5] *Id.*
25   [6] Email from webmaster@cpuc.ca.gov to usrb@cpuc.ca.gov (Nov. 8, 2018, 8:12 PM), *available at* https://www.edison.com/content/dam/eix/documents/Woolsey_Electric_Safety_Report.pdf.
26   [7] U.S. Patent No. 4,672,501 at [57] (filed Jun. 9, 1987), *available at* https://patentimages.storage.googleapis.com/ef/0b/92/75ae045d0c1c87/US4672501.pdf.
27   [8] Denise Duffield et al., *Massive Woolsey Fire Began On Contaminated Santa Susana Field Laboratory, Close to Site of Partial Meltdown*, PHYSICIANS FOR SOC. RESPONSIBILITY L.A. (Nov. 12, 2018), https://www.psr-la.org/massive-woolsey-fire-began-on-contaminated-santa-susana-field-laboratory-close-to-site-of-partial-meltdown.
28   [9] Brenda Gazzar, *How did the Woolsey fire get its name?*, THE SAN BERNARDINO SUN (Nov. 9, 2018, 10:55 AM), https://www.sbsun.com/2018/11/09/how-did-the-woolsey-fire-get-its-name.

2
COMPLAINT

7.      By 2:50 p.m. on November 8, 2018, a helicopter crew member from the Los Angeles County Fire Department estimated that the fire had already destroyed five acres, with a rapid rate of spread and structures threatened.[10]

8.      On November 12, 2018, state officials and entities, including the California Department of Forestry and Fire Protection and the California Governor's Office of Emergency Services, began investigations into whether SCE was responsible for the outbreak of the Woolsey Fire on or near to the SSFL.[11]  It was not until November 21, nine days later, that the Woolsey Fire reached 100% containment.

9.      Investigations by the California Department of Forestry and Fire Protection have already concluded that an earlier fire, which ignited almost two hours before the first reports of Woolsey Fire, was probably caused by SCE equipment.[12]  Plaintiffs thereon allege that, despite actual knowledge of this earlier fire, SCE still did not take adequate steps to prevent the far more destructive Woolsey Fire from subsequently igniting later that afternoon.

10.     On December 6, 2018, SCE wrote to CPUC and stated that "SCE's first responding troubleman conducted a patrol to evaluate the operational status of its facilities and found no wire down on the 16kV circuit.  SCE subsequently found a guy wire in proximity to a jumper at a lightweight tubular steel pole,"[13] meaning that the guy wire, a tensioned cable, was less than eight feet from the jumper and less than six feet from the pole.[14]  This guy wire was found on the ground, having failed, and no longer providing support to the intended structure.  An SCE press release further stated that "the potential that the Nov. 8 outage was related to contact being made between

///

///

---

[10] Cosgrove, *supra* note 1.
[11] *State Probes Southern California Edison for Possible Role in Deadly Woolsey Fire*, NBC L.A. (Nov. 12, 2018, 4:24 PM), https://www.nbclosangeles.com/news/local/State-Probes-Southern-California-Edison-for-Possible-Role-in-Deadly-Woolsey-Fire-500324141.html.
[12] Cheri Carlson, *Cal Fire investigator finds power lines likely at fault of Newbury Park fire*, VC STAR (Jan. 28, 2019, 9:32 AM), http://www.vcstar.com/story/news/local/2019/01/28/investigator-finds-power-lines-likely-fault-newbury-park-fire/2575497002.
[13] Letter from Robert Ramos, Dir. of Risk and Claims Mgmt., S. Cal. Edison, to Cal. Pub. Utils. Comm'n (Dec. 6, 2018), *available at* https://www.edison.com/content/dam/eix/documents/woolsey_letter_to_cpuc.pdf.
[14] Cal. Pub. Utils. Comm'n, *State of California Rules for Overhead Electric Line Construction, General Order No. 95* at II-12, II-13, V-52 (Jan. 2015), http://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M146/K646/146646565.pdf.

3

COMPLAINT

1    the guy wire and the jumper remains under review by SCE," as well as "several additional areas of

2    focus."[15]

3        11.    Safety is paramount when distributing electricity in areas of high wind and high fire

4    risks, such as Ventura County and the County of Los Angeles.  At least five percent of wildfire

5    ignitions in California are from power lines, and they account for eleven percent of acres burned.[16]

6    The probability of ignition from a power line increases with wind speed.  Greater wind speed means

7    conditions which are more favorable to the spread of wildfire, conditions where suppression is less

8    effective, and conditions in which firefighters are likely to be spread thin.[17]

9        12.    SCE's history of inadequately maintaining equipment, failing to manage risks

10    appropriately, improperly allocating spending, and failing to improve practices in each of these

11    areas, including refusing to bury or properly insulate power lines in high fire risk areas such as

12    Malibu, cause Plaintiffs to allege, on information and belief, that the ignition of the Woolsey Fire

13    originated with Electrical Equipment wantonly, negligently, carelessly, recklessly, and/or

14    unlawfully designed, engineered, installed, constructed, built, used, maintained, inspected, repaired,

15    managed, owned and/or operated by the SCE Defendants on or near to the SSFL.

16        13.    Plaintiffs also allege, on information and belief, that the ignition of the Woolsey Fire

17    originated from, was caused, and/or was substantially contributed to by the BOEING Defendants'

18    wanton, negligent, careless, reckless, and/or unlawful ownership, control, operation and/or

19    management of the SSFL in a dangerous and/or defective condition, resulting in the ignition and

20    rapid spread of the Woolsey Fire.

21        14.    On information and belief, the SCE Defendants and the BOEING Defendants, and

22    each of them, were substantial factors causing and/or contributing to the Woolsey Fire and each is

23    jointly and severally liable for all damages caused by the Woolsey Fire.

24    / / /

---

25    [15] Press Release, Edison Int'l, SCE Publicly Releases CPUC Submission on the Woolsey Fire (Dec. 6, 2018),
26    https://newsroom.edison.com/releases/sce-publicly-releases-cpuc-submission-on-the-woolsey-fire.
      [16] Carolyn Kousky et al., *Wildfire Costs In California: The Role Of Electric Utilities*, Wharton Univ. of Pa. Risk Mgmt.
27    and Decision Process Ctr. Issue Brief at 3 (Aug. 2018), *available at* https://riskcenter.wharton.upenn.edu/wp-
      content/uploads/2018/08/Wildfire-Cost-in-CA-Role-of-Utilities-1.pdf.
28    [17] Joseph W. Mitchell, *Power line failures and catastrophic wildfires under extreme weather conditions*, 35 Engineering
      Failure Analysis 726-735 (Dec. 15, 2013).

4

COMPLAINT

## II.    JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this matter pursuant to California Code of Civil Procedure section 410.10.

16.    This Court has personal jurisdiction over the SCE Defendants pursuant to California Code of Civil Procedure section 410.10.  Defendant EDISON INTERNATIONAL is a publicly traded utility with its corporate headquarters in Rosemead, Los Angeles County, California. Defendant SCE is a subsidiary of Defendant EDISON INTERNATIONAL and its corporate headquarters are also in Rosemead, Los Angeles County, California.  The SCE Defendants both do regular and substantial business in Los Angeles County, California.  The SCE Defendants are utilities regulated by the CPUC.[18]

17.    This Court has personal jurisdiction over the BOEING Defendants pursuant to California Code of Civil Procedure section 410.10.  THE BOEING COMPANY is publicly traded corporation with its corporate headquarters in Chicago, Illinois.  THE BOEING COMPANY owns the SSFL and does regular and substantial business in Los Angeles, California.

18.    Venue is proper in this Court pursuant to California Code of Civil Procedure section 392 (injury to real property, court nearest and most accessible to where Plaintiffs' properties are situated), section 395 (injury to personal property, court in county where Plaintiffs' injuries occurred), and section 395.5 (action against corporation, court in county where Defendants' obligation and liability arose, court in county where breach occurred by Defendants, on real property owned by the BOEING Defendants and where they do substantial and regular business, and court in county where the SCE Defendants have their principal place of business).

19.    The amount in controversy exceeds the jurisdictional minimum of this court.

## III.    PLAINTIFFS

20.    Plaintiffs ANDREW VON OEYEN and EMMANUEL VILLAUME are residents and owners of property in Malibu, California and suffered substantial losses as a result of the Woolsey Fire including, but not limited to, loss of business income, evacuation expenses, emotional

---

[18] *SCE Regulatory Highlights*, EDISON INT'L, https://www.edison.com/home/investors/sce-regulatory-highlights.html (last visited Jan. 22, 2019).

Exhibit A, Page 11

1  distress, and loss of real and personal property.  A week after their award-winning architectural home

2  was completed, the Woolsey Fire destroyed the entire structure, contents, and landscape of the VON

3  OEYEN VILLAUME property.  Internationally acclaimed concert pianist and recording artist

4  ANDREW VON OEYEN lost his specially crafted grand piano, and both he and EMMANUEL

5  VILLAUME, Music Director of The Dallas Opera, Prague Philharmonia, and frequent guest

6  conductor at the Metropolitan Opera, among many other venues, lost unique musical scores with

7  hundreds of hours of professional annotations, among other valuable professional and personal

8  property used in their musical careers.

9      21.    Plaintiffs DAWN ERICSON, individually and as Trustee of the DAWN NAVARRO

10  ERICSON TRUST, and DOMINIQUE NAVARRO are residents and/or owners of property in

11  Malibu, California and suffered substantial losses as a result of the Woolsey Fire including, but not

12  limited to, loss of business income, evacuation expenses, emotional distress, and loss of real and

13  personal property.  DAWN ERICSON lived in her Malibu property for over forty-five years before

14  her home was burned to the ground in the Woolsey Fire, destroying a lifetime of valuable and

15  cherished personal possessions.  She also lost her successful publishing business, inventory, office,

16  studio, research library, and decades of artwork including paintings, illustration, design work,

17  computer files, photography, and research materials, which can never be recreated, completely

18  halting both her productivity and her steady income.  Her daughter, DOMINIQUE NAVARRO, an

19  award-winning art director, book publisher, and professional artist, lost her childhood home,

20  business office and studio, her valuable personal and professional possessions, and decades of work,

21  including her Emmy Award and all her artwork, in the flames.

22      22.    Plaintiffs JACK SILVERMAN, CLAIRE SILVERMAN, and MARIEL

23  SANDOVAL, individually and as parent and natural guardian of STELLA BELLE SANDOVAL, a

24  minor, are residents and owners of property in Malibu, California and suffered substantial losses as

25  a result of the Woolsey Fire including, but not limited to, loss of business income, evacuation

26  expenses, emotional distress, and loss of real and personal property.  Their family home was razed

27  to the ground by the Woolsey Fire, which destroyed precious photos, children's drawings, and other

28  items of immense sentimental and emotional value.

Exhibit A, Page 12

23.    Plaintiffs CLIFF HIRSCH and GLADYS HIRSCH are residents and owners of property in Malibu, California and suffered substantial losses as a result of the Woolsey Fire including, but not limited to, loss of business income, evacuation expenses, emotional distress, and loss of real and personal property.  CLIFF HIRSCH and his wife GLADYS HIRSCH are longtime residents of Malibu, aged 97 years and 93 years, respectively, when they were forced to leave their home because of the Woolsey Fire.  They returned after the mandatory evacuation orders were lifted to find their home completely destroyed along with all their personal possessions acquired over a lifetime.

24.    Plaintiffs ISHC LOMPOC LLC, PAUL ROTHBARD, and CHELSEA SEGAL are residents and owners of property in Malibu, California and suffered substantial losses as a result of the Woolsey Fire including, but not limited to, loss of business income, evacuation expenses, emotional distress, and loss of real and personal property.  PAUL ROTHBARD was in the midst of a beautiful remodel of his property with his fiancée CHELSEA SEGAL, who was 6 months pregnant at the time, when their home was destroyed by the Woolsey Fire.  They are expecting a baby boy in late February and had planned on moving in during the summer of 2019, the fact that they are unable to do so has caused great emotional pain and stress.

## IV.    DEFENDANTS

### A.  THE SCE DEFENDANTS

25.    At all times herein mentioned, the SCE Defendants were corporations authorized to do business and doing business in the State of California, with their principal place of business in the County of Los Angeles, State of California.  Defendant EDISON INTERNATIONAL ("EDISON") is an energy-based holding company headquartered at 2244 Walnut Grove Avenue, Rosemead, California, and the parent company of Defendant SCE, which lists its general address as 2244 Walnut Grove Avenue, Rosemead, California, 91770.  The SCE Defendants have registered an agent for service of process with the California Secretary of State, listed as Cristina E. Limon, 2244 Walnut Grove Avenue, Rosemead, California 91770, for each.[19]

---

[19] Business Search, CAL. SEC'Y OF STATE, https://businesssearch.sos.ca.gov (select "Corporation Name" under "Search Type"; then search in search bar for "Southern California Edison"; then follow "SOUTHERN CALIFORNIA EDISON" hyperlink in search results) (last visited Feb. 4, 2019); Business Search, CAL. SEC'Y OF STATE,

7

COMPLAINT

1    26.    Subsidiaries of EDISON, including SCE, provide customers with public utility

2  services and services related to the generation of energy, generation of electricity, transmission of

3  electricity and natural gas, and the distribution of energy in Los Angeles County.

4    27.    SCE is in the business of providing electricity to the residents and businesses of

5  Central, Coastal, and Southern California and, more particularly, to Plaintiffs' residences,

6  businesses, and properties through a network of electrical transmission and distribution lines.  SCE

7  owns, controls, operates, and/or manages an "[e]lectric plant" in Los Angeles County, as described

8  by California Public Utilities Code section 217, and is therefore an "[e]lectrical corporation" in Los

9  Angeles County, under California Public Utilities Code section 218(a), and a "[p]ublic utility" in

10  Los Angeles County, pursuant to California Public Utilities Code section 216(a).

11    28.    SCE, based in Los Angeles County, is one of the nation's largest electric utilities,

12  serving 14 million people across a 50,000 square-mile area within Central, Coastal, and Southern

13  California.  It is wholly-owned by EDISON, which has a market cap of approximately $19 billion.[20]

14  As of December 31, 2017, SCE's assets total approximately $51.5 billion.[21]

15    29.    EDISON is a publicly traded company that owns, controls, operates, and/or manages

16  an "[e]lectric plant" in Los Angeles County, as described by California Public Utilities Code section

17  217, and is therefore an "[e]lectrical corporation" in Los Angeles County, under California Public

18  Utilities Code section 218(a), and a "[p]ublic utility" in Los Angeles County, pursuant to California

19  Public Utilities Code section 216(a).  It develops and operates energy infrastructure assets related to

20  the production and distribution of energy such as power plants, electric lines, natural gas pipelines,

21  and liquefied natural gas receipt terminals.  As of September 30, 2018, EDISON's total assets are

22  approximately $52.5 billion.[22]

23  / / /

24

25  https://businesssearch.sos.ca.gov (select "Corporation Name" under "Search Type"; then search in search bar for "Edison International"; then follow "EDISON INTERNATIONAL" hyperlink with an "Entity Number" of "C1585456"

26  in search results) (last visited Feb. 4, 2019).
[20] Edison International (EIX), YAHOO! FINANCE, https://finance.yahoo.com/quote/EIX (last visited Jan. 22, 2019).

27  [21] EDISON INT'L & S. CAL. EDISON, 2017 FIN. & STATISTICAL REPORT 2 (2018).
https://www.edison.com/content/dam/eix/documents/investors/sec-filings-financials/2017-financial-statistical-

28  report.pdf.
[22] Id.

30.   The SCE Defendants have at least $1 billion of wildfire-specific insurance coverage for events that occurred during the period June 1, 2018 through May 31, 2019, including the Woolsey Fire.[23]   They have at least $300 million of additional insurance coverage for wildfire-related occurrences for the period from December 31, 2017 to December 31, 2018, including the Woolsey Fire.[24]   They also have other general liability insurance coverage of approximately $450 million.[25]

31.   At all relevant times, the SCE Defendants were suppliers of electricity to members of the public.  As part of supplying electricity to members of the public, SCE designed, engineered, installed, constructed, built, used, maintained, inspected, repaired, replaced, managed, owned, and/or operated Electrical Equipment for the purpose of conducting electricity for delivery to members of the general public.  Furthermore, Plaintiffs are informed and believe that the SCE Defendants are responsible for maintaining vegetation near, around, and in proximity to their Electrical Equipment in compliance with state and federal law, including but not limited to: (a) California Public Resource Code sections 4292, 4293 and 4294; (b) California Public Utilities Code sections 451 and 8386(a); (c) California Health and Safety Code section 13001; and (d) CPUC General Orders Nos. 95 and 165, pursuant to California Public Utilities Code section 702.

32.   Plaintiffs are informed and believe, and thereon allege, that the SCE Defendants are jointly and severally liable for each other's negligence, misconduct, and wrongdoing, as alleged herein, in that:

   a.   The SCE Defendants operate as a single business enterprise operating out of the same building located at 2244 Walnut Grove Avenue, Rosemead, California, 91770 for the purpose of effectuating and carrying out SCE's business and operations, and/or for the benefit of EDISON;

   b.   The SCE Defendants do not operate as completely separate entities but rather integrate their resources to achieve a common business purpose;

---

[23] EDISON INT'L & S. CAL. EDISON, 2017 ANNUAL REPORT 5 (2018), https://www.edison.com/content/dam/eix/documents/investors/corporate-governance/2017-eix-sce-annual-report.pdf.
[24] Id.
[25] Id.

9

COMPLAINT

c. SCE is so organized and controlled, and its decisions, affairs, and business so conducted, as to make it a mere instrumentality, agent, conduit, or adjunct of EDISON;

d. SCE's income results from function integration, centralization of management, and economies of scale with EDISON;

e. The SCE Defendants' officers and management are intertwined and do not act completely independent of one another;

f. The SCE Defendants' officers and managers act in the interest of SCE as a single enterprise;

g. EDISON has control and authority to choose and appoint SCE's board members as well as its other top officers and managers. Despite the fact that they are both Electric Companies and Public Utilities, the SCE Defendants do not compete with one another, but have been structured and organized and their business is effectuated so as to create a synergistic, integrated, single enterprise where various components operate in concert with one another;

h. EDISON maintains unified administrative control over SCE;

i. The SCE Defendants are insured by the same carriers and provide uniform or similar pension, health, life, and disability insurance plans for employees;

j. The SCE Defendants have unified 401(k) plans, pension, and investment plans, bonus programs, vacation policies, and paid time off from work schedules and policies;

k. The SCE Defendants invest funds from their programs and plans by a consolidated and/or coordinated Benefits Committee controlled by SCE and administered by common trustees and administrators;

l. The SCE Defendants have unified personnel policies and practices and/or a consolidated personnel organization or structure;

m. The SCE Defendants have unified accounting policies and practices dictated by EDISON and/or common or integrated accounting organizations or personnel;

10

COMPLAINT

1         n.  The SCE Defendants are represented by common legal counsel;

2         o.  EDISON's officers, directors, and other management make policies and decisions to

3           be effectuated by SCE and/or otherwise play roles in providing directions and

4           making decisions for SCE;

5         p.  EDISON's officers, directors, and other management direct certain financial

6           decisions for SCE, including the amount and nature of capital;

7         q.  EDISON's written guidelines, policies, and procedures control SCE's employees,

8           policies and practices;

9         r.  EDISON files consolidated earnings statements factoring in all revenue and losses

10          from SCE, as well as consolidated tax returns, including those seeking tax relief,

11          and/or without limitation;

12         s.  EDISON generally directs and controls SCE's relationship with, requests to and

13          responses to inquiries from the CPUC and uses such direction and control for the

14          benefits of EDISON.

15      33.    Plaintiffs are informed and believe that the SCE Defendants were the agents and/or

16 employees of each other and, in acting and/or failing to act as alleged herein, the SCE Defendants,

17 and each of them, were acting in the course and scope of said agency and/or employment

18 relationship.

19     **B.  THE BOEING DEFENDANTS**

20      34.    THE BOEING COMPANY is an American multinational corporation, headquartered

21 at 100 North Riverside Plaza, Chicago, Illinois, 60606. THE BOEING COMPANY is an aerospace

22 company and a manufacturer of commercial jetliners, defense, space, and security systems. THE

23 BOEING COMPANY has registered an agent for service of process with the Corporation Service

24 Company, and the address of said registered agent is 2710 Gateway Oaks Drive, Suite 150N,

25 Sacramento, California, 95833.[26]

26

27 [26] Business Search, CAL. SEC'Y OF STATE, https://businesssearch.sos.ca.gov (select "Corporation Name" under "Search
Type"; then search in search bar for "The Boeing Company"; then follow "THE BOEING COMPANY" hyperlink on

28 Page 2 of search results; then follow "Corporation Service Company . . ." hyperlink under "Agent for Service of
Process") (last visited Feb. 4, 2019).

35.     At all times herein mentioned, the BOEING Defendants were corporations authorized to do business and doing business in the State of California, including Los Angeles County. The BOEING Defendants own the facility located at Santa Susana Field Laboratory, Bravo Road, Brandeis, California, 93064, which includes the Chatsworth electrical substation. The BOEING Defendants also have numerous other facilities across Los Angeles County at which they do business, including, but not limited to: 4060 North Lakewood Boulevard, Long Beach, California, 90808; 2060 East Imperial Highway, El Segundo, California, 90245; and 1500 East Avenue M, Palmdale, California, 93550.

**C. THE DOE DEFENDANTS**

36.     The true names of DOES 1 through 100 (the "DOE Defendants"), whether individual, corporate, associate, or otherwise, are unknown to Plaintiffs who, pursuant to California Code of Civil Procedure section 474, sue these DOE Defendants under fictitious names.

37.     Each of the fictitiously named Defendants is responsible in some manner for the conduct alleged herein, including, without limitation, by way of conspiracy, aiding, abetting, furnishing the means for, and/or acting in capacities that create agency, *respondeat superior*, and/or predecessor or successor in interest relationships with Defendants.

38.     The DOE Defendants are private individuals, contractors, vegetation management contractors, inspection contractors, maintenance contractors, land owners and/or possessors, associations, partnerships corporations, or other entities that actively assisted and participated in the negligent and wrongful conduct alleged herein in ways that are currently unknown to Plaintiffs.

39.     To the extent that any DOE Defendant is a governmental entity, at the time of filing of any amendment related to a fictitiously named governmental entity defendant, Plaintiffs will have either received notice of rejection of the claim for Damages or the claim will have been deemed rejected by operation of law, pursuant to California Government Code section 912.4(c).

40.     Some or all of the DOE Defendants may be residents of the State of California. Plaintiffs may amend or seek leave to amend this Complaint to allege the true names, capacities, and responsibility of these DOE Defendants once they are ascertained and to add additional facts and/or legal theories.

## V.    GENERAL ALLEGATIONS AGAINST THE SCE DEFENDANTS

### A.  THE SCE DEFENDANTS HAVE A NON-DELEGABLE DUTY TO SAFELY MAINTAIN THEIR ELECTRICAL EQUIPMENT

41.    The SCE Defendants, and each of them, install, construct, build, maintain, manage, own, and/or operate Electrical Equipment throughout Southern California for the purpose of transmitting and distributing electricity to the general public. This Electrical Equipment was located at and around the point of origin of the Woolsey Fire.

42.    Electrical infrastructure is inherently dangerous and hazardous, and the SCE Defendants recognize it as such. The transmission and distribution of electricity requires the SCE Defendants to exercise an increased level of care in accordance with the increased risk of associated danger.

43.    At all relevant times, the SCE Defendants, and each of them, had a non-transferable, non-delegable duty to properly design, engineer, install, construct, build, use, maintain, inspect, repair, manage, own, and/or operate their Electrical Equipment. The SCE Defendants also had a duty to keep vegetation properly trimmed and maintained to prevent foreseeable contact with their Electrical Equipment.

44.    In the construction, inspection, repair, maintenance, management, ownership, and/or operation of their power lines and other electrical equipment, the SCE Defendants had an obligation to comply with, *inter alia*: (a) California Public Resource Code section 4292 (mandatory ten feet firebreaks for electricity poles and towers), section 4293 (mandatory four to ten feet firebreaks for all electricity conductors; mandatory removal of dead or weak trees that may contact conductors), and section 4294 (mandatory removal of trees and growth that may fall across self-supporting aerial cables); (b) California Public Utilities Code section 451 (promote the safety, health, comfort, and convenience of the public) and section 8386(a) (minimize the risk of wildfire); (c) California Health and Safety Code section 13001 (clearing inflammable material or taking such other reasonable precautions necessary to insure against starting and spreading of fire when using and operating any device which may cause fire); and (d) CPUC General Orders Nos. 95 (mandatory regulations on overhead electric line construction) and 165 (mandatory inspection requirements for electric

13

COMPLAINT

1    distribution and transmission facilities), pursuant to California Public Utilities Code section 702

2    (public utilities shall obey and comply with every order prescribed by the commission).

3        45.    The SCE Defendants knew or should have known that these statutory and regulatory

4    standards are minimum standards. The SCE Defendants knew or should have known that they had

5    (1) a duty to identify vegetation that is dead, diseased, and/or dying, or that otherwise poses a

6    foreseeable hazard to their Electrical Equipment; and (2) a duty to manage the growth of vegetation

7    near their Electrical Equipment so as to prevent the foreseeable danger of contact between

8    vegetation and their Electrical Equipment starting a fire.

9        46.    The SCE Defendants had and have a duty to manage, maintain, repair, and/or replace

10   their aging infrastructure to protect public safety. These objectives could and should have been

11   accomplished in several ways, including, but not limited to, putting Electrical Equipment in

12   wildfire-prone areas underground, increasing inspections, developing and implementing protocols

13   to shut down electrical operations in emergency situations, modernizing infrastructure, and/or

14   obtaining an independent audit of their risk management programs to ensure effectiveness.

15       47.    Further, the SCE Defendants are acutely aware that they had and have a duty to

16   identify, assess, and mitigate wildfire risks, and to monitor severe weather conditions that pose an

17   increased risk of a wildfire.

18       48.    At all times mentioned herein, the SCE Defendants failed to appropriately monitor

19   the wildfire risk that was developing in the days and hours before the Woolsey Fire ignited and

20   failed to implement mitigating measures such as de-energizing their Electrical Equipment, ensuring

21   proper vegetation management was in place, and/or issuing warnings to the public regarding the

22   foreseeable increased risk of a wildfire, which had already materialized earlier that day.

23       49.    The SCE Defendants also have an absolute duty to prevent their Electrical

24   Equipment from causing or contributing to any fire. On information and belief, Defendants'

25   Electrical Equipment caused or contributed to the ignition of the Woolsey Fire and is responsible

26   for all the injuries and damages to Plaintiffs from the fire.

27   / / /

28   / / /

**B. THE SCE DEFENDANTS WERE AWARE OF THE HIGH RISK OF WILDFIRE AND THE CONSEQUENCES OF A FAILURE TO MANAGE THAT RISK**

50.    The SCE Defendants knew or should have known that a breach of the applicable standards and duties constituted negligence and would expose members of the public to a risk of death, injury, destruction, and damage to their property and businesses.

51.    California's drought years increased the risk of wildfire and consequently heightened the SCE Defendants' duty of care in the prevention of wildfires. At all relevant times, the SCE Defendants were aware that the State of California had been in a multi-year period of drought, stating in a December 2018 press release that "[m]ultiple factors contribute to wildfires across SCE's service territory and throughout California. This includes the buildup of dry vegetation in areas severely impacted by years of historic drought; . . . increasing temperatures; lower humidity; and strong Santa Ana winds."[27] In January 2014, Governor Jerry Brown declared a state of emergency due to California's continued drought conditions.[28] In June 2014, pursuant to Resolution ESRB-4, the CPUC directed SCE and all investor-owned utilities to take remedial measures to reduce the likelihood of fires started by or threatening utility facilities.[29] In addition, the CPUC informed SCE and investor-owned utilities that it could seek recovery of incremental costs associated with these remedial measures outside of the standard funding process. Although the Governor issued an Executive Order in April 2017 ending the Drought State of Emergency, the declaration directed state agencies to "continue response activities that may be needed to manage the lingering drought impacts to people and wildlife."[30]

52.    The SCE Defendants were aware of the foreseeable danger of wildfire as a result of the use of their Electrical Equipment, stating in a September 2018 press release that "up to 10

///

[27] Edison Int'l, *supra* note 15.
[28] *Governor Brown Declares Drought State of Emergency*, GOVERNOR OF THE STATE OF CAL. (Jan. 17, 2014), https://www.gov.ca.gov/2014/01/17/news18368.
[29] In re Pacific Gas and Electric Co., PACIFIC GAS AND ELECTRIC CO. 2 (May 28, 2015), http://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M152/K294/152294313.PDF.
[30] Governor of Cal. Exec. Order B-40-17, ¶ 10, *available at* https://www.gov.ca.gov/wp-content/uploads/2017/09/4.7.17_Exec_Order_B-40-17.pdf.

15

COMPLAINT

1    percent of wildfire ignitions in California are from power lines."[31]  According to records maintained

2    by the California Department of Forestry and Fire Protection, electrical equipment was responsible

3    for starting 270 wildfires in the Southern California region during 2016, the latest year such

4    statistics have been published.[32]  The SCE Defendants were also aware that, in Southern California,

5    utility-started fires cluster in the autumn months and are associated with Santa Ana wind conditions,

6    a regular and foreseeable event.[33]

7        53.    Further, the SCE Defendants were aware that large areas of Ventura County and of

8    the County of Los Angeles are, and have been historically categorized as, "Very High Fire Hazard

9    Severity Zones."[34]

10        54.    By November 2015, SCE had identified and was aware that its 18 electrical facilities

11    were located in areas where, due to environmental and/or weather conditions, they posed an

12    increased risk of wildfires, including that approximately 75% of SCE's territory and 993 SCE

13    circuits were in designated "High Fire" areas.[35]

14        55.    In May 2016, the CPUC adopted Fire Map 1, which "depicts areas of California

15    where there is an elevated hazard for ignition and rapid spread of power line fires due to strong

16    winds, abundant dry vegetation, and other environmental conditions."[36]  As of January 19, 2018, the

17    area in and around the Woolsey Fire was color-coded red, indicating "a very high risk of a

18    devastating wildfire."[37]

19

[31] Press Release, Edison Int'l, SCE Proposes Grid Safety and Resiliency Program to Address the Growing Risk of
20    Wildfires (Sept. 10, 2018), https://newsroom.edison.com/releases/sce-proposes-grid-safety-and-resiliency-program-to-
    address-the-growing-risk-of-wildfires.
21    [32] CAL. DEPT. OF FORESTRY AND FIRE PROT., 2016 WILDFIRE ACTIVITY STATISTICS 14 (2017),
    http://calfire.ca.gov/downloads/redbooks/2016_Redbook/2016_Redbook_FINAL.PDF.
22    [33] Alexandra D. Syphard and Jon E. Keeley, *Location, timing and extent of wildfire vary by cause of ignition*, 24(1) Int.
    Journal of Wildland Fire 37-47 (Jan. 13, 2015).
23    [34] CAL. DEPT. OF FORESTRY AND FIRE PROT., VENTURA CTY. FIRE HAZARD SEVERITY ZONES IN SRA (Nov. 2007),
    http://frap.fire.ca.gov/webdata/maps/ventura/fhszs_map.56.jpg; CAL. DEPT. OF FORESTRY AND FIRE PROT., L.A. CTY.
24    FIRE HAZARD SEVERITY ZONES IN SRA (Nov. 2007),
    http://frap.fire.ca.gov/webdata/maps/los_angeles/fhszs_map.19.jpg.
25    [35] Senate Information Hearing: Wildfire Safety, S. CAL. EDISON 2,
    https://seuc.senate.ca.gov/sites/seuc.senate.ca.gov/files/11-18-15_edison_testimony.pdf.
26    [36] Press Release, Cal. Pub. Utils. Comm'n, CPUC Fire Map Depicts Areas of Elevated Hazards in State; First Step In
    Creation of Tools to Help Manage Resources (May 26, 2016), https://www.naruc.org/bulletin/the-bulletin-
27    053116/california-cpuc-fire-map-depicts-areas-of-elevated-hazards-in-state-first-step-in-creation-of-tools-to-help-
    manage-resources.
28    [37] CAL. PUB. UTILS. COMM'N, CPUC FIRE-THREAT MAP, ftp://ftp.cpuc.ca.gov/safety/fire-
    threat_map/2018/PrintablePDFs/8.5X11inch_PDF/CPUC_Fire-Threat_Map_final.pdf.

COMPLAINT

1    56.    On July 12, 2018, the CPUC reiterated its authorization to the SCE

2    Defendants to de-energize power lines, given appropriate customer notification, to enhance

3    the safety of overhead electrical power lines located in high fire-threat areas to prevent

4    wildfire.[38]

5    57.    On November 6, 2018, the National Weather Service issued a "Red Flag Warning"

6    for Ventura and Los Angeles counties.  That day, SCE activated its Emergency Operations Center

7    and began its forty-eight hour notification program to government officials, emergency

8    management agencies, fire chiefs, and customers in Agoura Hills, Chatsworth, Malibu, Simi Valley,

9    and other areas that "due to meteorological forecasts of dangerous high winds in designated Red

10   Flag high risk fire area, SCE has now determined" that approximately "27,000 customers are being

11   notified today of possible power shut-offs in-portions of these communities."  Despite actual

12   knowledge of the local conditions and of the high risk of devastating wildfire, SCE elected not to

13   shut off circuits, including its Big Rock 16kV circuit, on November 8, 2018.

14   58.    Further, SCE had actual knowledge that the high risk of wildfire resulting

15   from their Electrical Equipment had materialized earlier that day.  Just before 1:00 p.m. on

16   the day of the Woolsey Fire, a fire ignited in or around Newbury Park.  The California

17   Department of Forestry and Fire Protection investigation has already "determined the

18   probable ignition source for the fire was an electrical malfunction in the [SCE] power

19   lines."[39]  Despite the clear and ongoing danger, SCE still elected not to de-energize the

20   Big Rock circuit, or to take other adequate steps, that would have prevented further fires

21   caused by their Electrical Equipment on that same day.

22   59.    The SCE Defendants, although mandated to do so, failed to identify,

23   inspect, manage, and/or control vegetation growth near its Electrical Equipment.  Further,

24   SCE failed to construct, manage, track, monitor, maintain, replace, repair, and/or improve

25   / / /

26   its Electrical Equipment, despite being aware that its infrastructure was unsafe and/or

---

[38] Press Release, Cal. Pub. Utils. Comm'n, CPUC Strengthens Utility Public Notice Requirements For De-Energizing in Emergencies (July 12, 2018), http://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M217/K918/217918600.PDF.
[39] Carlson, *supra* note 12.

17
COMPLAINT

1  vulnerable to environmental conditions.

2  **C. THE SCE DEFENDANTS KNEW THAT THEIR ELECTRICAL**

3  **EQUIPMENT WAS IMPROPERLY MAINTAINED AGAINST THE RISK**

4  **OF WILDFIRE**

5  60.    SCE's risk mitigation systems were knowingly ineffective in assessing deficiencies

6  in its wildfire safety programs, vegetation management programs, and maintenance and inspection

7  programs. Moreover, SCE's officers, employees, and/or agents abdicated their responsibility of

8  oversight, auditing, and/or evaluation of mitigation measures used to prevent against the risk of

9  wildfires caused by operation of its Electrical Equipment. SCE has a well-documented history of

10 inadequately maintaining equipment, failing to manage risks appropriately, improperly allocating

11 spending, and failing to improve practices in each of these areas.

12 61.    SCE was determined to be responsible for the 2007 Nightsky fire in Ventura County

13 where its overloaded power lines arced and sparked, igniting nearby brush. SCE was also held

14 responsible for its role in the 2007 Malibu Canyon Fire. The fire began when three wooden utility

15 poles snapped during high Santa Ana winds and ignited nearby brush. The fire burned 3,836 acres

16 and destroyed or damaged over 30 structures. The CPUC alleged that SCE misled investigators

17 about the circumstances of the fire. SCE agreed to conduct a safety audit and remediation of its

18 utility poles in the Malibu area. The CPUC fined SCE $37 million for its role in the fire.[40]

19 Additionally, $17 million of the settlement was required to be spent on a "Safety Enhancement

20 Fund" for assessments of poles and remediation work in Malibu area.[41] In 2007, the SCE

21 Defendants made a profit of $1.1 billion.[42]

22 62.    Since 2007, the CPUC has levied over $78 million in fines against SCE for electric

23 and fire-related incidents.[43] This equates to over 65% of all fines levied for this

24 period, even though SCE is just one of eight electricity and communications utilities regulated by

25
_____

26 [40] Cal. Pub. Utils. Comm'n, Electric and Fire Related Fines, http://cpuc.ca.gov/uploadedFiles/CPUC_Public_Website/Content/Safety/Electric_and_Fire_Related_Fines.pdf.

26 [41] Knowles Adkisson, *Edison to pay $37 million for 2007 Malibu Canyon fire*, The Malibu Times (May 21, 2013).

27 http://www.malibutimes.com/news/article_7ace05ac-c1eb-11e2-8303-0019bb2963f4.html.

27 [42] Edison Int'l & S. Cal. Edison, 2007 Financial & Statistical Report 2 (2008),

28 https://www.edison.com/content/dam/eix/documents/investors/sec-filings-financials/2007EIXFinStat-a.pdf.

28 [43] Cal. Pub. Utils. Comm'n, *supra* note 39.

18

COMPLAINT

the CPUC.

63.    In late 2011, a wind event in the San Gabriel Valley resulted in the failure of nearly 250 wood poles and over 1,000 overhead conductors.  A CPUC investigation determined that many of the poles failed due to inadequate maintenance and inspection processes.  It found that at least seventeen guy wires did not meet the "minimum safety factor requirements," and further, that it was likely that violations of vegetation management requirements not only existed prior to the incident but were "directly related."  The CPUC would have found many more violations, had it not been for SCE's willful destruction of most of the evidence in direct contravention to the industry-wide preservation of evidence rules.[44]  In 2011, the SCE Defendants made a profit of $1 billion.[45]

64.    In December 2012, the CPUC ordered SCE to conduct a sample of SCE-owned and jointly-owned utility poles to determine whether pole loading (the attachment of Electrical Equipment to a pole) complied with current legal standards.  SCE's study found that 22.3% of the more than 5,000 poles tested failed to meet current design standards.[46]

65.    In November 2013, SCE admitted to the CPUC that it routinely violates industry standards.  SCE stated that it "replaced approximately 8,000 poles per year (on average) as a part of [routine maintenance]. This is simply not enough. . . . [We] found that a percentage of [our] in-service poles did not meet the required [industry-regulated] safety

///
///
///
///

[44] CAL. PUB. UTILS. COMM'N CONSUMER PROT. AND SAFETY DIV., Investigation of S. Cal. Edison Co.'s Outages of Nov. 30 and Dec. 1, 2011, PRELIMINARY REPORT 3-5 (Feb. 1, 2012), https://autl.assembly.ca.gov/sites/autl.assembly.ca.gov/files/hearings/CPSD%20Preliminary%20Report%20on%20SCE%20Wind%20Event%202-1-2012.pdf.
[45] EDISON INT'L & S. CAL. EDISON, 2011 FINANCIAL & STATISTICAL REPORT 2 (2012), https://www.edison.com/content/dam/eix/documents/investors/sec-filings-financials/2011_Financial&Statistical_Report.pdf.
[46] Morgan Cook, *Study: Nearly one-fourth of Edison power poles overloaded*, THE ORANGE COUNTY REGISTER (Aug. 20, 2013, 2:28 PM), https://www.ocregister.com/2013/08/20/study-nearly-one-fourth-of-edison-power-poles-overloaded.

19
COMPLAINT

1  factors, even when deterioration is excluded from the calculation."[47] In 2013, the SCE Defendants

2  made a profit of $915 million.[48]

3      66.    In 2014, SCE claims to have started a program of pole remediation. In its

4  2015 General Rate Case, SCE estimated that 19% of its utility poles were overloaded as a

5  part of this assessment. However, in its 2018 General Rate Case, SCE disclosed that instead

6  of addressing the problems with its infrastructure, it modified its software used to calculate

7  pole loading safety factors and these revisions reduced the percentage of poles it needed to

8  remediate to just 9%.[49] The CPUC, in its 2017 report on the 2018 General Rate Case, noted

9  "concern[] that any forthcoming assessments [by SCE] utilizing new software and

10  potentially continually changing design criteria could not be adequately managing, mitigating and

11  minimizing safety risks associated with pole loading" and recommended the hiring of "an

12  independent engineering firm, with appropriately State of California licensed engineers, verify and

13  validate [SCE's] software . . . against General Order 95 Overhead Line Construction safety

14  requirements," since SCE had been unable to do so reliably on its own.[50]

15      67.    On May 15, 2014, an SCE overhead conductor separated and fell to the ground. A

16  person was killed when they came into contact with the downed conductor that was energized.

17  CPUC investigators found that the overhead conductor separated at an overhead connector, and that

18  SCE did not maintain the connector for its intended use, resulting a $50,000 citation.[51] In 2014, the

19  SCE Defendants made a profit of $1.6 billion.[52]

[47] S. CAL. EDISON, 2015 GEN. RATE CASE BEFORE THE PUB. UTILS. COMM'N OF THE STATE OF CAL. (Nov. 2013). http://www3.sce.com/sscc/law/dis/dbattach5e.nsf/0/B394F106B39238E888257C210080EE7A/$FILE/SCE-03%20Vol.%2001.pdf.

[48] EDISON INT'L & S. CAL. EDISON, 2013 FINANCIAL & STATISTICAL REPORT 2 (2014). https://www.edison.com/content/dam/eix/documents/investors/sec-filings-financials/2013_Financial%26Statistical_Report.pdf.

[49] S. CAL. EDISON, 2018 GEN. RATE CASE, Deep Dive on SCE Testimony on Poles (Nov. 6, 2016). http://www3.sce.com/sscc/law/dis/dbattach5e.nsf/0/A28EC07320A738528825805F0000CB70/$FILE/SCE%20Worksh op%20Presentation-Pole%20Deep%20Dive%2011-02-2016.pdf.

[50] Risk and Safety Aspects of S. Cal. Edison's 2018-2020 Gen. Rate Increase, CAL. PUB. UTILS. COMM'N 54-55 (Jan. 31, 2017) http://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M179/K227/179227683.PDF.

[51] CAL. PUB. UTILS. COMM'N SAFETY AND ENF'T DIV., INCIDENT INVESTIGATION REPORT (Apr. 29, 2015), http://www.cpuc.ca.gov/uploadedFiles/CPUC_Public_Website/Content/Safety/Electric_Safety_and_Reliability/Facility _Safety/Citations/Enclosure%201.pdf; CAL. PUB. UTILS. COMM'N, supra at note 35.

[52] EDISON INT'L & S. CAL. EDISON, 2014 FINANCIAL & STATISTICAL REPORT 2 (2015). https://www.edison.com/content/dam/eix/documents/investors/sec-filings-financials/2014-financial-statistical-report.pdf.

20

COMPLAINT

68.    In 2015, the failure of SCE's electrical facilities caused fires in several underground structures, resulting in explosions at Long Beach that blew manhole covers into the air.[53] In 2015, the SCE Defendants made a profit of $1 billion.[54]

69.    In January 2017, the CPUC stated that "SCE's approach to identify threats or risk drivers suffers from an almost non-existent level of granularity," that "SCE's current risk-informed decision-making process is still too immature," and that SCE had wrongly equated the risk of wildfire to the risk of copper theft: "copper theft would not seem to be at the same level of risk as wildfire, as it is not nearly as catastrophic or pervasive. Why was SCE unable to present any differentiation or prioritization between these two outcomes?"[55] SCE "admitted in testimony that it did not use risk assessment in the identification of its top risks, or to select programs to address those risks, but mostly after-the-fact as a way to measure risk reduction associated with the programs or projects proposed."[56] Further, the CPUC rebuked SCE: "SCE is classifying major categories of spending as safety related, even though they relate to issues of customer satisfaction or electric service reliability than safety."[57] CPUC recommended that "SCE develop, implement, and demonstrate a robust program for evaluating the effectiveness of its risk management program."[58]

70.    On October 30, 2018, less than two weeks before the Woolsey Fire, SCE admitted that it "believes its equipment was linked to the ignition" of the Thomas Fire,[59] which burned through 281,893 acres of Southern California in December 2017[60] and

---

[53] Jason Kandel, *Manhole Covers Explode in Long Beach*, NBC L.A. (July 15, 2015, 4:36 PM), https://www.nbclosangeles.com/news/local/Underground-Electrical-Fire-Reported-in-Long-Beach-315580761.html.
[54] EDISON INT'L & S. CAL. EDISON, 2015 FINANCIAL & STATISTICAL REPORT 2 (2016), https://www.edison.com/content/dam/eix/documents/investors/sec-filings-financials/2015-financial-statistical-report-final.pdf.
[55] CAL. PUB. UTILS. COMM'N, RISK AND SAFETY ASPECTS OF S. CAL. EDISON'S 2018-2020 GENERAL RATE CASE APPLICATION 32 (Jan. 31, 2017). http://www.cpuc.ca.gov/uploadedFiles/CPUC_Public_Website/Content/Safety/Risk_Assessment/SCE%20GRC%20Report%20Draft%20013117%20Final.pdf.
[56] *Id.* at 44.
[57] *Id.* at 5.
[58] *Id.* at 7.
[59] Nicole Chavez, *Power utility says its equipment may have sparked the second largest wildfire in California history*, CNN (Oct. 31, 2018, 3:05AM), https://www.cnn.com/2018/10/31/us/southern-california-edison-sce-thomas-fire/index.html.
[60] CAL. DEP'T OF FORESTRY AND FIRE PROT., TOP 20 MOST DESTRUCTIVE CALIFORNIA WILDFIRES, http://www.fire.ca.gov/communications/downloads/fact_sheets/Top20_Destruction.pdf.

21

COMPLAINT

1    resulted in mudslides killing twenty-one people.[61]  In 2017, the SCE Defendants made a profit of

2    $565 million.[62]

3         71.    The SCE Defendants are aware of their operating flaws but do not improve

4    their practices, instead electing to pursue excessive profits.  Even following the Thomas

5    Fire, the largest fire in state history at the time,[63] SCE continues to place high profits over

6    safety and spent millions of dollars on media advertising in 2018, diverting funds away from

7    infrastructure and vegetation management improvements that would bring the company in

8    line with the basic safety standards it currently, and knowingly, subverts.  This deliberate

9    decision to appease shareholders, at the risk of the health and the safety of the public at

10   large, is both a conscious disregard for the rights and lives of Plaintiffs, and malicious,

11   willful, wanton, and despicable conduct as defined by California Civil Code section 3294.

12        **VI.    GENERAL ALLEGATIONS AGAINST THE BOEING DEFENDANTS**

13        **A.    THE BOEING DEFENDANTS HAVE A NON-DELEGABLE DUTY TO**

14             **KEEP THEIR PROPERTY REASONABLY SAFE**

15        72.    The Santa Susana Field Laboratory ("SSFL") is located thirty miles northwest of

16   Downtown Los Angeles in southeastern Ventura County, near the crest of the Simi Hills at the

17   western border of the San Fernando Valley.  A former rocket engine test and nuclear research

18   facility, the 2,849-acre field laboratory is currently the focus of a comprehensive environmental

19   investigation and cleanup program.[64]

20        73.    The BOEING Defendants own, operate, manage, possess, and/or control the SSFL.

21   This area is inherently dangerous and hazardous, and the BOEING Defendants recognize it as such.

22   The nature of the toxic contamination within the SSFL requires the BOEING Defendants to

23   exercise an increased level of care in accordance with the increased risk of associated danger.  The

24   Chatsworth electrical substation is located on the SSFL property.  Electrical infrastructure is

25

26   [61] CTY. OF SANTA BARBARA, 2018 XSB JAN. STORM INCIDENT UPDATE, https://www.countyofsb.org/asset.c/3813.
     [62] EDISON INT'L & S. CAL. EDISON, *supra* note 21.

27   [63] Nicole Chavez, *Thomas Fire is the largest blaze in California history*, CNN (Dec. 23, 2017, 11:15 AM).
     https://www.cnn.com/2017/12/23/us/thomas-fire-california/index.html.

28   [64] DEP'T OF TOXIC SUBSTANCES CONTROL, *Santa Susana Field Lab*,
     https://www.dtsc.ca.gov/SiteCleanup/Santa_Susana_Field_Lab (last visited Jan. 22, 2019).

1    inherently dangerous and hazardous, and the BOEING Defendants recognize it as such. The

2    transmission and distribution of electricity on their property requires the BOEING Defendants to

3    exercise an increased level of care in accordance with the increased risk of associated danger.

4         74.    At all relevant times, the BOEING Defendants, and each of them, had a non-

5    transferable, non-delegable duty to properly use, maintain, inspect, repair, manage, own, and/or

6    operate Electrical Equipment located on their property. The BOEING Defendants also had a duty

7    to keep vegetation properly trimmed and maintained to prevent foreseeable contact with Electrical

8    Equipment.

9         75.    At all relevant times, the BOEING Defendants had a non-delegable duty to

10   maintain the SSFL in a safe condition by using due care to eliminate dangerous conditions

11   by acting as a reasonable person would in view of the probability of injury to others.

12        76.    In the ownership, operation, management, possession, and/or control of the

13   SSFL, the BOEING Defendants had an obligation to comply with, *inter alia*, (a) California

14   Civil Code section 1714(a) (not to cause injury by want of ordinary care and skill in

15   management of property); (b) California Public Resources Code section 4422 (not to

16   knowingly allowing fire to escape property); and (c) California Health and Safety Code

17   section 13001 (clearing inflammable material or taking such other reasonable precautions

18   necessary to insure against starting and spreading of fire when using and operating any

19   device which may cause fire), and section 41700 (not to discharge air contaminants or other

20   material that cause injury, nuisance, or annoyance to the public, nor to discharge air

21   contaminants that endanger the health and comfort of the public).

22        77.    The BOEING Defendants knew or should have known that they had a duty to

23   exercise reasonable care in the management of their property under the circumstances to

24   avoid exposing persons to an unreasonable risk of harm.

25   / / /

26   / / /

27   / / /

28   / / /

23
COMPLAINT

**B.    THE BOEING DEFENDANTS WERE AWARE OF THE HIGH RISK OF WILDFIRE AND THE CONSEQUENCES OF A FAILURE TO MANAGE THAT RISK**

78.    The BOEING Defendants knew or should have known that a breach of the applicable standards and duties constituted negligence and would expose members of the public to a risk of death, injury, and/or destruction or damage to their property and businesses.

79.    California's drought years increased the risk of wildfire and consequently heightened the BOEING Defendants' duty of care in the prevention of wildfires.  At all relevant times, the BOEING Defendants were aware that the State of California had been in a multi-year period of drought.

80.    The BOEING Defendants were aware of the foreseeable danger of wildfire.  The BOEING Defendants were aware that large areas of Ventura County and of the County of Los Angeles are, and have been historically categorized as, "Very High Fire Hazard Severity Zones."[65]

81.    The SSFL is contaminated with tons of radioactive and toxic chemical waste, created by decades of nuclear accidents and rocket testing.

82.    In January 2006, a CBS News affiliate reported that the BOEING Defendants agreed to pay $30 million to settle claims that the nearly 100 neighbors of the Santa Susana Field nuclear research facility were sickened by decades of radioactive and toxic contamination.  The settlement, which ended an eight-year legal battle, was supposed to remain confidential, but one of the plaintiffs divulged the terms to the local media.[66]

83.    In 2007, the Los Angeles Regional Water Quality Control Board fined the BOEING Defendants over $470,000 for seventy-nine water pollution violations occurring between October 2004 and January 2006 at the SSFL, involving wastewater and storm water runoff discharges containing elevated levels of chromium, dioxin, lead, mercury, and other pollutants.[67]

---

[65] CAL. DEP'T OF FORESTRY AND FIRE PROT., *supra* note 33.
[66] PROJECT ON GOV'T OVERSIGHT, Radioactive and Toxic Contamination, https://www.contractormisconduct.org/misconduct/296/radioactive-and-toxic-contamination (last visited Jan. 22, 2019).
[67] PROJECT ON GOV'T OVERSIGHT, Water Pollution (Simi Valley, CA), https://www.contractormisconduct.org/misconduct/886/water-pollution-simi-valley-ca (last visited Jan. 22, 2019).

24

COMPLAINT

84.     In 2010, the BOEING Defendants settled with the State of California in the amount of $575,000 after the California Attorney General's Office alleged that they had racked up at least forty runoff violations from December 2006 to December 2009 when contaminants including chloride, radioactive material, iron, mercury, manganese, dioxins, and zinc were found in elevated levels in the stormwater runoff.[68]

85.     In 2012, the BOEING Defendants agreed to pay the City of Santa Monica $39.5 million over the course of ten years to settle claims that the BOEING Defendants had contaminated the local water supply with chemical solvents when it operated manufacturing facilities in the area from the 1940s to the 1970s.[69]

86.     By 2017, pursuant to agreements signed by the BOEING Defendants and then-Governor of California Arnold Schwarzenegger in 2010, the BOEING Defendants were meant to have cleaned up the SSFL to a standard safe for residents.[70] This has not been completed, allegedly causing rare cases of cancer in children living close to the site.[71]

87.     The BOEING Defendants were aware of the foreseeable danger of wildfire causing the toxins in the ground to contaminate the air. The BOEING Defendants have or had a private fire department on site at the SSFL.[72] According to the BOEING Defendant's SSFL Emergency Readiness Assurance Plan, submitted to the United States Department of Energy, this was to protect against "[o]ne of the greatest hazards at SSFL . . . brush-covered hills. . . . it is important to be able to respond quickly to a brush fire."[73]

/ / /

---

[68] PROJECT ON GOV'T OVERSIGHT, Santa Susana Field Laboratory Pollution, https://www.contractormisconduct.org/misconduct/1305/santa-susana-field-laboratory-pollution (last visited Jan. 22, 2019).

[69] PROJECT ON GOV'T OVERSIGHT, Santa Monica Water Contamination Settlement, https://www.contractormisconduct.org/misconduct/1777/santa-monica-water-contamination-settlement (last visited Jan. 22, 2019).

[70] Joel Grover and Amy Corral, *Kardashians Join in Calls for Santa Susana Field Lab Cleanup*, NBC L.A., (Nov. 15, 2018, 6:39 PM), https://www.nbclosangeles.com/news/local/Kardashians-Join-in-Calls-for-Santa-Susana-Field-Lab-Cleanup-500647371.html.

[71] *Concerned Parents Call For Full Cleanup Of Toxic Santa Susana Site*, CBS L.A. (Mar. 8, 2017, 6:18 PM), https://losangeles.cbslocal.com/2017/03/08/concerned-parents-call-for-full-cleanup-of-toxic-santa-susana-site.

[72] Cosgrove, *supra* note 1.

[73] Letter from Ravnesh Amar, Program Manager, The Boeing Company, to Thomas Johnson, U.S. Dep't of Energy 5 (Oct. 27, 2008), *available at* https://www.emcbc.doe.gov/SEB/ETEC/Browsing/Historical%20Site-wide%20Crosswalk/Historical%20Site-wide%20Crosswalk%20Documents/03/BD02-399-05.pdf.

25

COMPLAINT

C.    **THE BOEING DEFENDANTS KNEW THAT THEIR PROPERTY WAS**
      **NOT REASONABLY SAFE**

88.    The BOEING Defendants lowered the ultimate standard of clean-up that they promised.  The BOEING Defendants released a letter on or around August 22, 2017 to shareholders stating: "The revised proposed cleanup will be based on recreational land-use scenarios, and not a 'residential' cleanup as we originally volunteered."[74]  The BOEING Defendants' attempt to reduce the level of clean-up to a much weaker standard will leave some of these toxicants in place, risking people's health long into the future.[75]  This makes any risk of wildfire on the SSFL far more dangerous to the general public than normal wildfire, and the BOEING Defendants were and are aware of this.

89.    Despite the BOEING Defendants allegedly having their own fire brigade on the SSFL, officials with Ventura County Fire Department said they did not remember seeing or communicating with any of the BOEING Defendants' firefighters during the Woolsey Fire.[76]  The Los Angeles County Fire Department also said in a statement that they had "little to no interactions" with any of the BOEING Defendants' firefighters.[77]  The BOEING Defendants did not answer questions as to how many firefighters work on the grounds, how many fire engines they have, and what type of equipment they used to try to stop the fire.[78]  Further, the BOEING Defendants hampered the ability of Los Angeles County firefighters by not maintaining a sufficient supply of water at the SSFL,[79] despite representations in their Emergency Readiness Assurance Plan that hydrants were available for use by Ventura County, Los Angeles City, and Los Angeles County Fire Departments.[80]  Plaintiffs allege, on information and belief, that the BOEING Defendants did not maintain adequate fire prevention resources and/or personnel at the SSFL commensurate with the high risks, despite claiming to the contrary.

---

[74] Susan Abram, *Boeing altered its cleanup plan for toxic Santa Susana land. Here's why that worries local leaders,* L.A. DAILY NEWS (Sept. 15, 2017, 7:23 PM), https://www.dailynews.com/2017/09/15/boeing-altered-its-cleanup-plan-for-toxic-santa-susana-land-heres-why-that-worries-local-leaders.
[75] *Id.*
[76] Cosgrove, *supra* note 1.
[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] Letter from Ravnesh Amar, *supra* note 73.

26
COMPLAINT

90.    In producing the SSFL Emergency Readiness Assurance Plan with special knowledge and expertise, and making it publicly available, it was reasonably relied upon. The BOEING Defendants therein assumed responsibility to Plaintiffs to protect them from harm and damages suffered as a result of hazards on the SSFL, ensuring the United States government, and the public and authorities present in the areas surrounding the SSFL, that the SSFL was "maintained at a level commensurate with the hazards" of that facility.[81]

91.    By allowing the Woolsey Fire to ignite on their property, sending toxins into the air, and/or further failing to take adequate steps to contain or assist in the containment of the Woolsey Fire, the BOEING Defendants caused substantial losses and injuries to Plaintiffs.

92.    By not maintaining adequate fire prevention resources and/or personnel at the time of the Woolsey Fire and by failing to clean up the SSFL to the appropriate standard prior to the Woolsey Fire, in favor of reducing costs to increase commercial profits, the BOEING Defendants acted with a willful and conscious disregard of the rights and/or safety of Plaintiffs, and engaged in malicious, willful, wanton, and despicable conduct as defined by California Civil Code section 3294.

## VII.    CAUSES OF ACTION

### First Cause of Action

### NEGLIGENCE

### (Against the SCE Defendants and the DOE Defendants)

93.    Plaintiffs hereby reassert and reallege paragraphs 1 to 92, inclusive, as though fully set forth herein.

94.    The SCE Defendants and the DOE Defendants, and each of them, had and have a non-transferable, non-delegable duty to apply a level of care commensurate with and proportionate to the danger of designing, engineering, installing, constructing, building, using, maintaining, inspecting, repairing, replacing, managing, owning, and/or operating their Electrical Equipment, including vegetation clearance.

---

[81] *Id.*, enclosure at 2

Exhibit A, Page 33

95.    The SCE Defendants and the DOE Defendants, and each of them, have special knowledge and expertise, far beyond that of a layperson, that they were obligated and required to use in the designing, engineering, installation, construction, building, using, maintaining, inspecting, repairing, replacing, managing, owning, and/or operating of Electrical Equipment and surrounding vegetation in order to assure safety under the local conditions of the service area, including but not limited to, those conditions that have been identified herein.

96.    The SCE Defendants and the DOE Defendants, and each of them, breached their respective duties owed to Plaintiffs by, including, but not limited to: (1) failing to comply with the applicable statutory, regulatory, and/or professional standards of care; (2) failing to timely and properly maintain, manage, inspect, and/or monitor their Electrical Equipment and/or adjacent vegetation; (3) failing to properly cut, trim, prune, and/or otherwise keep vegetation at a sufficient distance to avoid foreseeable contact with their Electrical Equipment; (4) failing to trim and/or prune vegetation so as to avoid creation of a safety hazard within close proximity of their Electrical Equipment; (5) failing to make their Electrical Equipment safe under all the exigencies created by surrounding circumstances and conditions; (6) failing to design, construct, monitor, and/or maintain their Electrical Equipment in a manner that avoids the potential to ignite a fire during long dry seasons and/or high winds, such as insulating power lines in high risk areas; (7) failing to install the Electrical Equipment necessary and/or to inspect and repair the Electrical Equipment installed, to prevent their Electrical Equipment from improperly operating and/or making contact with its surroundings and igniting fires; (8) failing to keep their Electrical Equipment in a safe condition and/or manage their Electrical Equipment to prevent fire at all times; (9) failing to de-energize power lines during fire prone conditions; and/or (10) failing to properly train and to supervise employees and agents responsible for maintenance and inspection of their Electrical Equipment and/or vegetation areas nearby their Electrical Equipment.

97.    To the extent that the fire originated from the operation and/or use of any Electrical Equipment, engine, machine, and/or any other device which may kindle fire, the SCE Defendants and the DOE Defendants are prima facie negligent in the maintenance, operation, and/or use of such engine, machine, and/or device, pursuant to the California Public Resources Code section 4435.

1   98. The negligence of the SCE Defendants and the DOE Defendants was a

2 substantial factor in causing Plaintiffs' damages. The SCE Defendants' and the DOE

3 Defendants' failure to comply with their duties of care proximately caused Plaintiffs to

4 sustain damages as set forth herein. The conduct of the SCE Defendants and the DOE

5 Defendants was a substantial factor in causing the serious emotional distress suffered by

6 Plaintiffs.

7   99. As a further direct and legal result of the SCE Defendants' and the DOE

8 Defendants' actions and/or omissions, Plaintiffs have suffered and/or continue to suffer

9 great mental pain and suffering, including, but not limited to, worry, emotional distress,

10 humiliation, embarrassment, anguish, anxiety, and nervousness, in an amount to be shown

11 according to proof at trial.

12   100. As a further direct and legal result of the SCE Defendants' and the DOE

13 Defendants' actions and/or omissions, Plaintiffs have suffered serious emotional distress,

14 including, but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety,

15 worry, shock, humiliation, and shame, in an amount to be shown according to proof at trial.

16   101. As a further direct and legal result of the SCE Defendants' and the DOE

17 Defendants' actions and/or omissions, Plaintiffs have suffered and/or continue to suffer

18 personal injury, including fire-related, smoke-related, and/or particulate-related injuries, in

19 an amount to be shown according to proof at trial.

20   102. As a further direct and legal result of the SCE Defendants' and the DOE

21 Defendants' actions and/or omissions, Plaintiffs have suffered a loss of income, loss of

22 earning capacity, loss of profits, increased expenses due to displacement, and/or other

23 consequential economic losses in an amount to be show according to proof at trial.

24   103. As a further direct and legal result of the SCE Defendants' and the DOE

25 Defendants' actions and/or omissions, Plaintiffs have suffered the total loss of their real

26 property and damage to and/or loss of their personal property, including, but not limited to,

27 items of peculiar value to Plaintiffs and their cherished possessions, in an amount to be

28 shown according to proof at trial.

104.    As a further direct and legal result of the SCE Defendants' and the DOE Defendants' actions and/or omissions, Plaintiffs have incurred and will continue to incur expenses and other economic damages related to the damage to their property, including, but not limited to, costs relating to storage, clean up, disposal, repair, depreciation, and/or replacement of their property and/or other related consequential damages, in an amount to be shown according to proof at trial.

105.    As a further direct and legal result of the conduct of Defendants, Plaintiffs are entitled to reasonable attorneys' fees, including pursuant to California Code of Civil Procedure section 1021.9.

106.    SCE has a virtual monopoly over the transmission and distribution of electrical power to the areas affected by the Woolsey Fire and has individual contracts with all residents and businesses in those areas to which it distributes electrical power.  The communities affected by the Woolsey Fire are all dependent upon the safe transmission and distribution of electrical power for continuous residential and commercial usage, and the SCE Defendants and the DOE Defendants have contractual, statutory, and public duties to provide such electrical power in a manner that promotes those individual and public interests.

107.    The potential harms to Plaintiffs from wildfires, such as the Woolsey Fire, were objectively foreseeable, both in nature and in scope, and were actually known to the SCE Defendants and the DOE Defendants from their long history of causing such wildfires.  At all relevant times, the SCE Defendants and the DOE Defendants failed to properly design, engineer, install, construct, build, use, maintain, inspect, repair, replace, manage, own, and/or operate Electrical Equipment, which they knew, given the then-existing and known weather, climate, and wildfire risk conditions, posed a risk of serious harm to Plaintiffs and to their personal property, to their health and well-being, and to their businesses and livelihoods.  The SCE Defendants and the DOE Defendants were aware that if their Electrical Equipment came into contact with vegetation subject to long-term drought conditions, a fire would likely result.  The SCE Defendants and the DOE Defendants also knew that, given the existing and known weather, climate, and fire-risk conditions, the fire was likely to pose a risk of property damage, economic loss, personal injury, and/or death to the public, including Plaintiffs.

108.    Over the past decade, Defendant SCE has been subject to numerous fines and penalties because of SCE's failure to abide by safety rules and regulations.

109.    The property damage, personal injury, emotional distress, and economic losses caused by the Woolsey Fire are the direct and proximate result of the ongoing custom and practice of the SCE Defendants' and the DOE Defendants' election to consciously disregard the safety of the public and to refuse to comply with statutes, regulations, standards, and/or rules regarding the SCE Defendants' business operations. Despite having caused death, injury, extensive property damage, and economic loss, the SCE Defendants and the DOE Defendants have continued to act with a conscious disregard for the safety and rights of others and have ratified the unsafe conduct of their employees. Plaintiffs are informed and believe that no employee of the SCE Defendants has been discharged or disciplined as a result of failing and/or refusing to comply with regulations and/or as a result of injuries or property damage inflicted on members of the public.

110.    As set forth above and as will be shown according to proof, there is a high degree of certainty that Plaintiffs have suffered all the injuries and damages set forth herein, and there is an extremely close connection between those injuries and damages and the SCE Defendants' and the DOE Defendants' conduct. A high degree of moral blame is attached to the SCE Defendants' and the DOE Defendants' conduct, and the policy of preventing future harm justifies both the recognition of the existence of a duty of care owed by the SCE Defendants and the DOE Defendants to all Plaintiffs and the imposition of all damages described herein.

111.    The SCE Defendants' and the DOE Defendants' conduct, alleged herein, was a willful and conscious disregard of the rights or safety of others and was done with disdain for the disastrous consequences that the SCE Defendants and the DOE Defendants knew could occur because of their dangerous conduct. The wrongful conduct of the SCE Defendants and the DOE Defendants was more than just inadvertence, error of judgment, or negligence. Rather, the SCE Defendants' and the DOE Defendants' conduct was despicable and showed malice as defined by California Civil Code section 3294. The state

31
COMPLAINT

1  has an extremely strong interest in imposing sufficiently high punitive damages in actions where the

2  malicious conduct of the Defendant leads to wrongful deaths of its citizens.  Accordingly, Plaintiffs

3  seek the recovery of punitive and exemplary damages against the SCE Defendants and the DOE

4  Defendants, as set forth herein.

5                                    **Second Cause of Action**

6                                    **NEGLIGENCE**

7                **(Against the BOEING Defendants and the DOE Defendants)**

8        112.    Plaintiffs hereby reassert and reallege paragraphs 1 to 92, inclusive, as though fully

9  set forth herein.

10      113.    The BOEING Defendants and the DOE Defendants, and each of them, had and have

11 a non-transferable, non-delegable duty to apply a level of care commensurate with and

12 proportionate to the danger of any hazard arising on their property.  The Chatsworth electrical

13 substation is located on the SSFL property.  The transmission and distribution of electricity on their

14 property requires the BOEING Defendants and the DOE Defendants to exercise a further increased

15 level of care in accordance with the further increased risk of associated danger.

16      114.    At all relevant times, the BOEING Defendants and the DOE Defendants, and each of

17 them, had a non-transferable, non-delegable duty to properly use, maintain, inspect, repair, manage,

18 own, and/or operate the Electrical Equipment located on their property.  The BOEING Defendants

19 also had a duty to keep vegetation properly trimmed and maintained to prevent foreseeable contact

20 with their Electrical Equipment.

21      115.    The BOEING Defendants and the DOE Defendants, and each of them, have special

22 knowledge and expertise, far beyond that of a layperson, that they were obligated and required to

23 use in the designing, engineering, installation, construction, building, using, maintaining,

24 inspecting, repairing, replacing, managing, owning and/or operating of the SSFL, including those

25 conditions that have been identified herein, such as their special knowledge and expertise as to the

26 Chatsworth electrical substation and the toxins on the SSFL.

27      116.    The BOEING Defendants and the DOE Defendants, and each of them, breached

28 their respective duties owed to Plaintiffs by, including, but not limited to: (1) failing to comply with

1    the applicable standards of care; (2) failing to take reasonable care to discover any unsafe

2    conditions on their property; (3) failing to take action to rectify the dangerous and/or

3    defective condition that existed in their property that created the fire hazard; (4) failing to

4    take adequate action once the fire ignited; (5) failing to maintain the resources and/or

5    personnel necessary to prevent and/or suitably diminish the foreseeable, and foreseen, fire

6    hazard that materialized; (6) allowing the fire to escape their property such that harm was

7    caused to persons and property; and (7) failing to warn neighboring property owners of the

8    dangers inherent in the conditions of their property.

9         117.    To the extent that the fire originated from the operation and/or use of any

10    Electrical Equipment, engine, machine, and/or any other device which may kindle fire, the

11    BOEING Defendants and the DOE Defendants are prima facie negligent in the maintenance,

12    operation, and/or use of such engine, machine, and/or device, pursuant to the California

13    Public Resources Code section 4435.

14         118.    The negligence of the BOEING Defendants and the DOE Defendants was a

15    substantial factor in causing Plaintiffs' damages.  The BOEING Defendants' and the DOE

16    Defendants' failure to comply with their duties of care proximately caused Plaintiffs to

17    sustain damages as set forth herein.  The conduct of the BOEING Defendants and the DOE

18    Defendants was a substantial factor in causing the serious emotional distress suffered by

19    Plaintiffs.

20         119.    As a further direct and legal result of the BOEING Defendants' and the DOE

21    Defendants' actions and/or omissions, Plaintiffs have suffered and/or continue to suffer

22    great mental pain and suffering, including, but not limited to, worry, emotional distress,

23    humiliation, embarrassment, anguish, anxiety, and nervousness, in an amount to be shown

24    according to proof at trial.

25         120.    As a further direct and legal result of the BOEING Defendants' and the DOE

26    Defendants' actions and/or omissions, Plaintiffs have suffered serious emotional distress,

27    including, but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety,

28    worry, shock, humiliation, and shame, in an amount to be shown according to proof at trial.

121.    As a further direct and legal result of the BOEING Defendants' and the DOE Defendants' actions and/or omissions, Plaintiffs have suffered and/or continue to suffer personal injury, including fire-related, smoke-related, and/or particulate-related injuries, in an amount to be shown according to proof at trial.

122.    As a further direct and legal result of the BOEING Defendants' and the DOE Defendants' actions and/or omissions, Plaintiffs have suffered a loss of income, loss of earning capacity, loss of profits, increased expenses due to displacement, and/or other consequential economic losses in an amount to be shown according to proof at trial.

123.    As a further direct and legal result of the BOEING Defendants' and the DOE Defendants' actions and/or omissions, Plaintiffs have suffered the total loss of their real property and damage to and/or loss of their personal property, including but not limited to items of peculiar value to Plaintiffs and their cherished possessions, in an amount to be shown according to proof at trial.

124.    As a further direct and legal result of the BOEING Defendants' and the DOE Defendants' actions and/or omissions, Plaintiffs have incurred and will continue to incur expenses and other economic damages related to the damage to their property, including, but not limited to, costs relating to storage, clean up, disposal, repair, depreciation, and/or replacement of their property and/or other related consequential damages, in an amount to be shown according to proof at trial.

125.    As a further direct and legal result of the conduct of Defendants, Plaintiffs are entitled to reasonable attorneys' fees, including pursuant to California Code of Civil Procedure section 1021.9.

126.    The potential harms to Plaintiffs from wildfires, such as the Woolsey Fire, were objectively foreseeable, both in nature and in scope, and were actually known to the BOEING Defendants and the DOE Defendants. The BOEING Defendants and the DOE Defendants were aware that if they did not take adequate measures to ensure the safety of their property, a fire would likely result. The BOEING Defendants and the DOE Defendants also knew that, given the existing and known weather, climate, toxin, and fire risk conditions, the fire was likely to pose a risk of

34

COMPLAINT

1    property damage, economic loss, personal injury, and/or death to the public, including

2    Plaintiffs.

3          127.    The property damage, personal injury, emotional distress, and economic losses

4    occasioned by the Woolsey Fire are the direct and legal result of the BOEING Defendants

5    and the DOE Defendants wantonly, negligently, carelessly, recklessly, and/or unlawfully

6    owning, controlling, operating and/or managing the SSFL in a dangerous and/or defective

7    condition, resulting in the ignition of the Woolsey Fire.

8          128.    As set forth above and as will be shown according to proof, there is a high

9    degree of certainty that Plaintiffs have suffered all the injuries and damages set forth herein,

10   and that there is an extremely close connection between those injuries and damages and the

11   BOEING Defendants' and the DOE Defendants' conduct. A high degree of moral blame is

12   attached to the BOEING Defendants' and the DOE Defendants' conduct, and the policy of

13   preventing future harm justifies both the recognition of the existence of a duty of care owed

14   by the BOEING Defendants and the DOE Defendants to all Plaintiffs and the imposition of

15   all damages described herein.

16         129.    The BOEING Defendants' and the DOE Defendants' conduct, alleged herein,

17   was a willful and conscious disregard of the rights or safety of others and was done with

18   disdain for the disastrous consequences that the BOEING Defendants and the DOE

19   Defendants knew could occur because of their dangerous conduct. The wrongful conduct of

20   the BOEING Defendants and the DOE Defendants was more than just inadvertence, error of

21   judgment, or negligence. Rather, the BOEING Defendants' and the DOE Defendants'

22   conduct was despicable and showed malice as defined by California Civil Code section

23   3294. The state has an extremely strong interest in imposing sufficiently high punitive

24   damages in actions where the malicious conduct of the Defendant leads to wrongful deaths

25   of its citizens. Accordingly, Plaintiffs seek the recovery of punitive and exemplary damages

26   against the BOEING Defendants and the DOE Defendants, as set forth herein.

27   ///

28   ///

**Third Cause of Action**

**INVERSE CONDEMNATION AND STRICT LIABILITY FOR HARM CAUSED BY FIRE**

**(Against the SCE Defendants and the DOE Defendants)**

130.    Plaintiffs hereby reassert and reallege paragraphs 1 to 92, inclusive, as though fully set forth herein.

131.    Prior to and on November 8, 2018, Plaintiffs legally occupied, owned, and/or possessed real and/or personal property located in Los Angeles County in the area of the Woolsey Fire, as set forth herein.

132.    Prior to and on November 8, 2018, the SCE Defendants and the DOE Defendants designed, engineered, installed, constructed, built, used, maintained, inspected, repaired, replaced, managed, owned, and/or operated Electrical Equipment in Southern California.

133.    Prior to and on November 8, 2018, as a direct, necessary, and legal result of the SCE Defendants' and the DOE Defendants' installation, ownership, operation, use, control, and/or maintenance for a public use of electrical equipment, the SCE Defendants' and the DOE Defendants' Electrical Equipment came in contact with vegetation and/or broke, failed, fell down, sparked, and/or exploded, causing a wildfire that burned hundreds of thousands of acres. The fire damaged and/or destroyed real and/or personal property in which Plaintiffs had and have an interest.

134.    The damage to Plaintiffs' property was proximately and substantially caused by the SCE Defendants' and the DOE Defendants' actions and/or omissions in that the SCE Defendants' and the DOE Defendants' installation, ownership, operation, use, control, management, and/or maintenance for a public use of electrical equipment was negligent and caused the Woolsey Fire.

135.    Plaintiffs have not received adequate compensation for the damage to and/or destruction of their property, which constitutes a taking or damaging of Plaintiffs' property by the SCE Defendants and the DOE Defendants without just compensation.

136.    As a direct and legal result of the above-described damages to Plaintiffs' property, including, but not limited to, loss of use, interference with access and enjoyment of real property,

/ / /

1  and damage and/or destruction of personal property, Plaintiffs have been damaged in an

2  amount to be shown according to proof at trial.

3       137.   As a further direct and legal result of the damages to Plaintiffs' businesses,

4  Plaintiffs' goodwill has been damaged in an amount according to proof at trial, and for

5  which compensation is mandatory pursuant to California Civil Procedure section 1263.510.

6       138.   Plaintiffs have incurred and will continue to incur attorney, appraisal, and

7  engineering fees and costs because of the SCE Defendants' and the DOE Defendants'

8  conduct, in amounts that cannot yet be ascertained, but which are recoverable in this action

9  pursuant to California Code of Civil Procedure section 1036.

10       139.   Plaintiffs are entitled to prejudgment interest from November 8, 2018,

11  pursuant to California Constitution article 1, section 19(a) and California Code of Civil

12  Procedure section 1268.310.

13                           **Fourth Cause of Action**

14                           **PUBLIC NUISANCE**

15                           **(Against all Defendants)**

16       140.   Plaintiffs hereby reassert and reallege paragraphs 1 to 92, inclusive, as though

17  fully set forth herein.

18       141.   Plaintiffs own, occupy, and/or possess property at or near the site of the fire,

19  which is the subject of this action.  At all relevant times herein, Plaintiffs had a right to

20  occupy, enjoy, and/or use such property without interference by Defendants.

21       142.   Defendants owed a non-transferable, non-delegable duty to the public,

22  including Plaintiffs, to maintain their property in a reasonably safe condition and/or to

23  conduct their business in a manner that did not threaten harm or injury to the public.

24       143.   Defendants, by acting and/or failing to act as alleged herein, created a

25  condition that was harmful to the health of the public, including Plaintiffs, and created a fire

26  hazard and other potentially dangerous conditions to Plaintiffs' property, which interfered

27  with the comfortable occupancy, use, and/or enjoyment of Plaintiffs' property.  This

28  interference is both substantial and unreasonable.

144.    Plaintiffs did not consent, expressly or impliedly, to the wrongful conduct of Defendants.

145.    The hazardous condition that was created by and/or permitted to exist by Defendants affected a substantial number of people at the same time within the general public, including Plaintiffs, and constituted a public nuisance pursuant to California Civil Code section 3479 (anything injurious to health, offensive to the senses or an obstruction of the free use of property) and section 3480 (affecting at the same time an entire community or considerable number of persons), and California Public Resources Code section 4170 (uncontrolled fire burning on lands covered by flammable material, without proper precaution being taken to prevent its spread) and section 4171 (endangering public safety by fire hazard).

146.    As a direct and legal result of the conduct of Defendants, Plaintiffs suffered harm that is different from the type of harm suffered by the general public.  Specifically, Plaintiffs have lost the occupancy, possession, use, and/or enjoyment of their real and/or personal property, personal injury, discomfort, annoyance and/or emotional distress, including, but not limited to: (a) a reasonable and rational fear that the area is still dangerous due to mudslides; and (b) a reasonable and rational fear that the area is still dangerous due to toxic contamination, in an amount to be shown according to proof at trial.

147.    As a further direct and legal result of the conduct of Defendants, Plaintiffs have suffered, and will continue to suffer, discomfort, anxiety, fear, worries, annoyance, and/or stress attendant to the interference with Plaintiffs' occupancy, possession, use and/or enjoyment of their property, in an amount to be shown according to proof at trial.

148.    As a further direct and legal result Defendants' actions and/or omissions, Plaintiffs have suffered and/or continue to suffer personal injury, including, but not limited to, fire-related, smoke-related, and/or particulate-related injuries, in an amount to be shown according to proof at trial.

149.    A reasonable, ordinary person would be annoyed or disturbed by the condition created by Defendants, and the resulting Woolsey Fire.

/ / /

38
COMPLAINT

150. Defendants' conduct is unreasonable and the seriousness of the harm to the public, including Plaintiffs, outweighs the social utility of Defendants' conduct. There is little or no social utility associated with causing the Woolsey Fire to destroy hundreds of thousands of acres of Southern California.

151. The individual and/or collective conduct of Defendants set forth above resulting in the Woolsey Fire is not an isolated incident but is part of an ongoing and/or a repeated course of conduct, and Defendants' prior conduct and/or failures have resulted in other fires and harm to the public.

152. The unreasonable conduct of Defendants is a direct and legal cause of the harm, injury, and/or damage to the public, including Plaintiffs.

153. Defendants have individually and/or collectively failed to and refused to conduct proper inspections and/or maintenance, to properly trim, prune, and/or cut vegetation, and/or avert any other risk to ensure the safe operation of their business, and/or the safety of their property. Defendants' individual and/or collective failure to do so exposed every member of the public within the vicinity of the electrical equipment to a foreseeable danger of personal injury, death, and/or loss and/or destruction of real and personal property.

154. Pursuant to California Civil Code section 3493, Plaintiffs have standing to maintain an action for public nuisance because the nuisance is "specially injurious" to Plaintiffs.
Each of Plaintiffs' residences and/or businesses, *inter alia*, were destroyed, this loss is different and considerably greater harm than the harm which occurred to the general public.

155. For these reasons, Plaintiffs seek a permanent injunction ordering that the SCE Defendants stop continued violation of: (a) California Public Resource Code sections 4292, 4293, and 4294: (b) California Public Utilities Code sections 451 and 8386(a): (c) California Health and Safety Code section 13001; and (d) CPUC General Orders Nos. 95 and 165. Plaintiffs also seek an order directing the SCE Defendants to abate the existing and continuing nuisance described above, including but not limited to burying and properly insulating power lines in high risk areas, such as Malibu, and an order directing the

39

COMPLAINT

1    BOEING Defendants to abate the existing and continuing nuisance described above, including, but

2    not limited to, cleaning up the SSFL to the standard to which they originally volunteered in 2010,

3    maintaining an adequate fire department on the SSFL site, and ensuring sufficient water is available

4    on the SSFL site for fighting future brush fires.

5         156.    Further, Defendants' conduct, alleged herein, was despicable and subjected Plaintiffs

6    to cruel and unjust hardship in conscious disregard of their safety and rights, constituted oppression,

7    in favor of commercial gain, for which Defendants must be punished by punitive and exemplary

8    damages in an amount according to proof at trial. Plaintiffs are entitled to such damages.

9                          **Fifth Cause of Action**

10                          **PRIVATE NUISANCE**

11                          **(Against all Defendants)**

12        157.    Plaintiffs hereby reassert and reallege paragraphs 1 to 92, inclusive, as though fully

13    set forth herein.

14        158.    At all relevant times, Plaintiffs occupied property at or near the site of the Woolsey

15    Fire. At all relevant times herein, Plaintiffs had a right to occupy, enjoy, and/or use the property

16    without interference by Defendants.

17        159.    Defendants' actions, conduct, omissions, negligence, trespass, and/or failure to act

18    resulted in a fire hazard and a foreseeable obstruction to the free use of Plaintiffs' property, invaded

19    the right of Plaintiffs to use the property, interfered with Plaintiffs' enjoyment of the property,

20    causing Plaintiffs unreasonable harm and substantial actual damages, and constituted a nuisance

21    under California Civil Code section 3479.

22        160.    As a direct and proximate result of Defendants' conduct, Plaintiffs sustained losses

23    and damages, including, but not limited to, loss of occupancy, possession, use, and/or enjoyment of

24    their real and/or personal property, personal injury, discomfort, annoyance and/or emotional

25    distress, including, but not limited to: (a) a reasonable and rational fear that the area is still

26    dangerous due to mudslides; and (b) a reasonable and rational fear that the area is still dangerous

27    due to toxic contamination, in an amount to be shown according to proof at trial.

28    / / /

                                    40
                            COMPLAINT

1    161.    As a further direct and legal result of Defendants' conduct, Plaintiffs seek the

2    reasonable cost of repair or restoration of the property to its original condition and/or loss of use

3    damages in an amount to be shown according to proof at trial.

4    162.    Defendants' conduct, alleged herein, was a willful and conscious disregard of

5    the rights or safety of others and was done with disdain for the disastrous consequences that

6    Defendants knew could occur because of their dangerous conduct. The wrongful conduct of

7    Defendants was more than just inadvertence, error of judgment, or negligence. Rather,

8    Defendants' conduct was despicable and showed malice as defined by California Civil Code

9    section 3294. The state has an extremely strong interest in imposing sufficiently high

10   punitive damages in actions where the malicious conduct of the Defendant leads to wrongful

11   deaths of its citizens. Accordingly, Plaintiffs seek the recovery of punitive and exemplary

12   damages against Defendants, as set forth herein.

13                              **Sixth Cause of Action**

14                                     **TRESPASS**

15                              **(Against all Defendants)**

16   163.    Plaintiffs hereby reassert and reallege paragraphs 1 to 92, inclusive, as though

17   fully set forth herein.

18   164.    At all times relevant herein, Plaintiffs were the owners, tenants, and/or lawful

19   occupants of property damaged by the Woolsey Fire.

20   165.    Defendants, and each of them, in acting and/or failing to act in the manner set

21   forth above, caused the Woolsey Fire to ignite and/or spread out of control, and thereby

22   caused and/or contributed to the harm, damage, and/or injury to Plaintiff, resulting in a

23   trespass upon Plaintiffs' property interests.

24   166.    Plaintiffs did not grant permission for Defendants to wrongfully act in a

25   manner so as to cause the Woolsey Fire, which wrongfully entered upon Plaintiffs' property,

26   resulting in the harm, injury, and/or damage alleged herein.

27   ///

28   ///

167.    As a direct and legal result of the wrongful conduct of Defendants, and each of them, which led to the trespass, Plaintiffs have suffered and will continue to suffer damages as set forth above, in an amount according to proof at trial.

168.    As a further direct and legal result Defendants' actions and/or omissions, Plaintiffs have suffered and/or continue to suffer personal injury, including, but not limited to, fire-related, smoke-related, and/or particulate-related injuries, in an amount to be shown according to proof at trial.

169.    As a further direct and legal result of the conduct of Defendants, Plaintiffs seek double and/or treble damages for the negligent, willful, and wrongful injuries to timber, trees and/or underwood on their property, as allowed under California Civil Code section 3346, in an amount to be shown according to proof at trial.

170.    As a further direct and legal result of the conduct of Defendants, Plaintiffs are entitled to reasonable attorneys' fees, including pursuant to California Code of Civil Procedure section 1021.9.

171.    Defendants' conduct, alleged herein, was a willful and conscious disregard of the rights or safety of others and was done with disdain for the disastrous consequences that Defendants knew could occur because of their dangerous conduct. The wrongful conduct of Defendants was more than just inadvertence, error of judgment, or negligence. Rather, Defendants' conduct was despicable and showed malice as defined by California Civil Code section 3294. The state has an extremely strong interest in imposing sufficiently high punitive damages in actions where the malicious conduct of the Defendant leads to wrongful deaths of its citizens. Accordingly, Plaintiffs seek the recovery of punitive and exemplary damages against Defendants, as set forth herein.

### Seventh Cause of Action

### VIOLATION OF PUBLIC UTILITIES CODE SECTION 2106

### (Against the SCE Defendants and the DOE Defendants)

172.    Plaintiffs hereby reassert and reallege paragraphs 1 to 92, inclusive, as though fully set forth herein.

/ / /

42

COMPLAINT

173.    California Public Utilities Code section 2106 creates a private right of action against "[a]ny public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission . . . ."

174.    As a "public utility" within the meaning of the California Public Utilities Code, the SCE Defendants and the DOE Defendants at all times herein had a duty to properly design, construct, operate, maintain, inspect, and manage its electrical infrastructure as well as trim trees and vegetation in compliance with all relevant provisions of applicable orders, decisions, directions, rules or statutes, including, but not limited to, those stated in: (a) California Public Resource Code sections 4292, 4293, and 4294; (b) California Public Utilities Code sections 451 and 8386(a); and (c) CPUC General Orders Nos. 95 and 165.

175.    The violation of a legislative enactment or administrative regulation which defines a minimum standard of conduct is unreasonable per se. The SCE Defendants and the DOE Defendants, and each of them, violated the above listed requirements by: (a) failing to service, inspect, or maintain their Electrical Equipment and vegetation affixed to and in close proximity to their Electrical Equipment; (b) failing to provide Electrical Equipment of suitable design; (c) failing to construct and to maintain their Electrical Equipment for their intended use of safe transmission of electricity, considering the known condition of the combination of the dry season and vegetation of the area, resulting in Plaintiffs being susceptible to the ignition and spread of fire and the fire hazard and danger of electricity and electrical transmission and distribution; (d) failing to properly design, construct, operate, maintain, inspect, and manage their Electrical Equipment and the surrounding vegetation resulting in said vegetation igniting and accelerating the spread of the fire; (e) failing to properly safeguard against the ignition of fire during the course and scope of employee work on behalf of Defendants; and (f) failing to comply with the enumerated legislative enactments and administrative regulations.

1    176.   The SCE Defendants and the DOE Defendants, and each of them, proximately and

2    substantially caused the destruction, damage, and injury to Plaintiffs by their violations of

3    applicable orders, decisions, directions, rules, or statutes, including, but not limited to, those stated

4    in: (a) Public Resource Code sections 4292, 4293, and 4294; (b) Public Utilities Code sections 451

5    and 8386(a); (c) California Health and Safety Code section 13001; and (d) CPUC General Orders

6    Nos. 95 and 165.

7    177.   Plaintiffs were and are within the class of persons for whose protection applicable

8    orders, decisions, directions, rules, or statutes were adopted, including but not limited to, those

9    stated in: (a) California Public Resource Code sections 4292, 4293, and 4294; (b) California Public

10   Utilities Code sections 451 and 8386(a); (c) California Health and Safety Code section 13001; and

11   (d) CPUC General Orders Nos. 95 and 165.  As alleged herein, according to proof, the SCE

12   Defendants and the DOE Defendants are liable to Plaintiffs for all losses, damages, and injuries

13   caused by and resulting from the SCE Defendants' and the DOE Defendants' violation of such

14   orders, decisions, directions, rules, or statutes.

15   178.   The SCE Defendants' and the DOE Defendants' conduct, alleged herein, was willful

16   within the meaning of California Public Resources Code section 2106 and Plaintiffs seek the

17   recovery of punitive and exemplary damages against the SCE Defendants and the DOE Defendants,

18   as set forth herein.

19                          **Eighth Cause of Action**

20   **VIOLATION OF HEALTH & SAFETY CODE SECTION 13007 et seq.**

21                          **(Against all Defendants)**

22   179.   Plaintiffs hereby reassert and reallege paragraphs 1 to 92, inclusive, as though fully

23   set forth herein.

24   180.   By engaging in the acts and/or omissions alleged herein, Defendants, and each of

25   them, willfully, negligently, carelessly, recklessly, and/or in violation of law, set fire to and/or

26   allowed fire to be set to the property of another in violation of California Health & Safety Code

27   section 13007 et seq.

28   / / /

                              44
                           COMPLAINT

1        181.   As a direct and legal result of Defendants' violation of California Health &

2   Safety Code section 13007 et seq., Plaintiffs suffered recoverable damages to property under

3   California Health & Safety Code section 13007 et seq. and continue to suffer all the injuries

4   and damages described herein.

5        182.   As a further direct and legal result of Defendants, and each of them, violating

6   California Health & Safety Code section 13007 et seq., Plaintiffs are entitled to reasonable

7   attorneys' fees including pursuant to California Code of Civil Procedure section 1021.9.

8        183.   As a direct and legal result of the wrongful acts and/or omissions of

9   Defendants, and each of them. Plaintiffs suffered, and continue to suffer, all the injuries and

10   damages as set forth herein.

11        184.   Defendants' conduct, alleged herein, was a willful and conscious disregard of

12   the rights or safety of others and was done with disdain for the disastrous consequences that

13   Defendants knew could occur because of their dangerous conduct.  The wrongful conduct of

14   Defendants was more than just inadvertence, error of judgment, or negligence.  Rather,

15   Defendants' conduct was despicable and showed malice as defined by California Civil Code

16   section 3294.  The state has an extremely strong interest in imposing sufficiently high

17   punitive damages in actions where the malicious conduct of the Defendant leads to wrongful

18   deaths of its citizens.  Accordingly, Plaintiffs seek the recovery of punitive and exemplary

19   damages against Defendants, as set forth herein.

20                           **Ninth Cause of Action**

21        **VIOLATION OF HEALTH & SAFETY CODE SECTION 13008 et seq.**

22                       **(Against all Defendants)**

23        185.   Plaintiffs hereby reassert and reallege paragraphs 1 to 92, inclusive, as though

24   fully set forth herein.

25        186.   By engaging in the acts and/or omissions alleged herein, Defendants, and

26   each of them, allowed fire burning upon Defendants' property to escape the property

27   without exercising due diligence to control such fire, in violation of California Health &

28   Safety Code section 13008 et. seq.

45
COMPLAINT

1    187.    As a direct and legal result of Defendants' violation of California Health & Safety

2    Code section 13008 et seq., Plaintiffs suffered recoverable damages to property under California

3    Health & Safety Code section 13008 et seq. and continue to suffer all the injuries and damages

4    described herein.

5    188.    As a further direct and legal result of Defendants, and each of them, violating

6    California Health & Safety Code section 13008 et. seq., Plaintiffs are entitled to reasonable

7    attorneys' fees including, pursuant to California Code of Civil Procedure section 1021.9.

8    189.    As a direct and legal result of the wrongful acts and/or omissions of Defendants, and

9    each of them, Plaintiffs suffered, and continue to suffer, all the injuries and damages as set forth

10    herein.

11    190.    Defendants' conduct, alleged herein, was a willful and conscious disregard of the

12    rights or safety of others and was done with disdain for the disastrous consequences that Defendants

13    knew could occur because of their dangerous conduct. The wrongful conduct of Defendants was

14    more than just inadvertence, error of judgment, or negligence. Rather, Defendants' conduct was

15    despicable and showed malice as defined by California Civil Code section 3294. The state has an

16    extremely strong interest in imposing sufficiently high punitive damages in actions where the

17    malicious conduct of the Defendant leads to wrongful deaths of its citizens. Accordingly, Plaintiffs

18    seek the recovery of punitive and exemplary damages against Defendants, as set forth herein.

19                             **Tenth Cause of Action**

20                             **PREMISES LIABILITY**

21                             **(Against all Defendants)**

22    191.    Plaintiffs hereby reassert and reallege paragraphs 1 to 92, inclusive, as though fully

23    set forth herein.

24    192.    Defendants, and each of them, were the owners of an easement and/or real property

25    in the area of the origins of the Woolsey Fire and/or were the owners of Electrical Equipment upon

26    said easement(s) and/or right(s) of way.

27    193.    Defendants, and each of them, acted wantonly, unlawfully, carelessly, recklessly,

28    and/or negligently in owning, controlling, operating, and/or managing the SSFL.

46
COMPLAINT

1    or Electrical Equipment on or near to the SSFL and allowing an unsafe condition presenting

2    a foreseeable risk of fire danger to exist on such property.

3        194.    As a direct and legal result of the wrongful acts and/or omissions of the

4    Defendants, and each of them, Plaintiffs suffered, and continue to suffer, all the injuries and

5    damages as set forth herein.

6        195.    Defendants' conduct, alleged herein, was a willful and conscious disregard of

7    the rights or safety of others and was done with disdain for the disastrous consequences that

8    Defendants knew could occur because of their dangerous conduct.  The wrongful conduct of

9    Defendants was more than just inadvertence, error of judgment, or negligence.  Rather,

10   Defendants' conduct was despicable and showed malice as defined by California Civil Code

11   section 3294.  The state has an extremely strong interest in imposing sufficiently high

12   punitive damages in actions where the malicious conduct of the Defendant leads to wrongful

13   deaths of its citizens.  Accordingly, Plaintiffs seek the recovery of punitive and exemplary

14   damages against Defendants, as set forth herein.

15   **VIII.  PRAYER FOR RELIEF**

16       WHEREFORE, Plaintiffs pray for judgment against Defendants SCE, EDISON,

17   BOEING, and DOES 1 through 100, and each of them, as follows:

18   1.   Reasonable compensation for all economic harm caused by the Woolsey Fire,

19       including but not limited to:

20       a.   Repair, depreciation, and/or replacement of damaged, destroyed, and/or lost

21            personal and/or real property;

22       b.   Loss of the use, benefit, and enjoyment of Plaintiffs' real and/or personal

23            property;

24       c.   Loss of wages, earning capacity, business profits, proceeds, and/or goodwill;

25            and

26       d.   Any related displacement, evacuation, and/or relocation expenses.

27   2.   Reasonable compensation for all non-economic harm caused by the Woolsey

28       Fire, including but not limited to:

a.   Damages to their physical persons caused by fire, smoke, and/or particulates;

b.   Damages for annoyance, discomfort, disturbance, inconvenience, and mental anguish; and

c.   Damages for fear, worry, emotional distress, and loss of quiet enjoyment of property.

3.   Exemplary and punitive damages, including but not limited to:

a.   Treble or double damages for wrongful injuries to timber trees and/or underwood on Plaintiffs' property as allowed under California Civil Code section 3346;

b.   Treble or double damages in an amount according to proof for unlawful injuries to trees as allowed under California Code of Civil Procedure section 733;

c.   Exemplary damages in an amount according to proof pursuant to California Civil Code section 3294; and

d.   Exemplary damages in an amount according to proof pursuant to California Public Utilities Code section 2106.

4.   All costs of suit including, where appropriate, attorneys' fees, appraisal fees, engineering fees, and related costs, such as those allowed under California Code of Civil Procedure sections 1021.9 and 1036;

5.   Prejudgment interest under the California Constitution article 1, section 19(a), California Code of Civil Procedure section 1268.310, and California Civil Code sections 3287 and 3288, or otherwise;

6.   Post-judgment interest;

7.   Past and future damages;

/ / /

/ / /

/ / /

/ / /

48

COMPLAINT

8.   Imposition of permanent injunction ordering that the SCE Defendants stop continued violation of multiple laws, regulations, orders, and rules as set forth herein;

9.   Issuance of an order directing the SCE Defendants to abate nuisance;

10.  Issuance of an order directing the BOEING Defendants to abate nuisance; and

11.  For such other and further relief as the Court shall deem proper, all according to proof.


Respectfully submitted,


DATED: February 8, 2019                    HOWARTH & SMITH
                                           SUZELLE M. SMITH

                                           By: _____
                                           Don Howarth (SBN 53783)
                                           Suzelle M. Smith (SBN 113992)
                                           Pauleen Truong (SBN 317914)
                                           Howarth & Smith
                                           523 West Sixth Street, Suite 728
                                           Los Angeles, California 90014
                                           Telephone: (213) 955-9400
                                           Facsimile: (213) 622-0791
                                           Email: ssmith@howarth-smith.com

                                           Attorneys for Plaintiffs

49
COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury herein.

Respectfully submitted,

DATED: February 8, 2019                    HOWARTH & SMITH

SUZELLE M. SMITH

By: _Suzelle M. Smith_
Don Howarth (SBN 53783)
Suzelle M. Smith (SBN 113992)
Pauleen Truong (SBN 317914)
Howarth & Smith
523 West Sixth Street, Suite 728
Los Angeles, California 90014
Telephone: (213) 955-9400
Facsimile: (213) 622-0791
ssmith@howarth-smith.com

Attorneys for Plaintiffs

Exhibit A, Page 56