HOWARTH & SMITH
DON HOWARTH, (SBN 53783)
dhowarth@howarth-smith.com
SUZELLE M. SMITH, (SBN 113992)
ssmith@howarth-smith.com
PAULEEN TRUONG, (SBN 317914)
ptruong@howarth-smith.com
523 West Sixth Street, Suite 728
Los Angeles, California 90014
Telephone: (213) 955-9400
Facsimile: (213) 622-0791

Attorneys for Plaintiffs
ANDREW VON OEYEN, et al.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDREW VON OEYEN, an individual; EMMANUEL VILLAUME, an individual; DAWN ERICSON, individually and as Trustee of the DAWN NAVARRO ERICSON TRUST; DOMINQUE NAVARRO, an individual; JACK SILVERMAN, an individual; CLAIRE SILVERMAN, an individual; MARIEL SANDOVAL, individually and as parent and natural guardian of S.B.S., a minor; CLIFF HIRSCH, an individual; GLADYS HIRSCH, an individual; ISHC LOMPOC, LLC, a California limited liability company; PAUL ROTHBARD, an individual; and CHELSEA SEGAL, an individual, | Case No. 2:19-cv-03955 MWF(FFMx) |
| | First Amended Complaint filed: April 30, 2019 |
| | Date Removed: May 6, 2019 |
| Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO REMAND** |
| vs. | Hearing date: August 12, 2019 |
| SOUTHERN CALIFORNIA EDISON COMPANY; EDISON INTERNATIONAL; THE BOEING COMPANY; and DOES 1 through 100, inclusive, | Time: 10:00 a.m. |
| | Courtroom: 5A |
| Defendants. | Assigned to the Honorable Michael W. Fitzgerald |

/ / /

/ / /

**TABLE OF CONTENTS**

I. INTRODUCTION.......................................................1

II. STANDARD OF REVIEW............................................... 3

III. ARGUMENT.......................................................... 7

    A.   Plaintiffs' Amended Complaint Is the Operative
        Complaint...........................................7

    B.   Boeing Has Failed to Meet Its Burden Under the
        Federal Officer Removal Statute......................14

        1.   Boeing Was Not "Acting Under" Federal Officer
            Directions in Regard to Electrical and
            Vegetation Maintenance or Lack Thereof, Which
            Caused the Woolsey Fire.........................16

            a.   TCE Use....................................16

            b.   Radiation Contamination....................16

            c.   Remediation of Contamination...............17

        2.   Boeing Has Failed to Establish Causal Nexus
            Between Its Contractual Duties and Its Failure
            to Maintain the SSFL In Safe Condition.........19

        3.   Boeing Has Asserted No Colorable Federal
            Defenses.......................................21

            a.   The Government Contractor Defense..........21

            b.   Federal Preemption........................22

            c.   Defense Production Act....................23

            d.   Derivative Sovereign Immunity.............24

    C.   As a Matter of Law, the Price-Anderson Act is
        Inapplicable Here, Where No Radiation-Based Bodily
        Injury or Property Damage Has Been Claimed..........25

IV. CONCLUSION...................................................... 25

**TABLE OF AUTHORITIES**

**Cases**                                                                  **Page(s)**

*Anchorage v. Integrated Concepts & Research Corp.*,
  2013 WL 6118485 (D. Alaska Nov. 21, 2013) ..................... 21

*Anderson v. Hackett*,
  646 F. Supp. 2d 1041 (S.D. Ill. 2009) ......................... 24

*Arness v. Boeing N. Am., Inc.*,
  997 F. Supp. 1268 (C.D. Cal. 1998) ........................ *passim*

*Arutunian v. Mercedes-Benz USA, LLC*,
  2018 WL 6617636 (C.D. Cal. Dec. 17, 2018) .................. 4, 5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................. 1

*Boeing Co. v. Movassaghi*,
  768 F.3d 832 (9th Cir. 2014) .................................. 17

*Borgman v. Insphere Ins.*,
  2013 WL 1409921 (N.D. Cal. Apr. 8, 2013) ................... 3, 13

*Broadway Grill, Inc. v. Visa Inc.*,
  856 F.3d 1274 (9th Cir. 2017) ................................. 12

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,
  797 F.3d 720 (9th Cir. 2015) .............................. *passim*

*Carnegie-Mellon Univ. v. Cohill*,
  484 U.S. 343 (1988) ............................................. 9

*Christiansen v. Lincoln Nat'l Life Ins. Co.*,
  2010 WL 11515268, n.1 (C.D. Cal. Aug. 3, 2010) ................ 7

*Gibson v. Chrysler Corp.*,
  261 F.3d 927 (9th Cir. 2001) ............................. 5, 6, 9

*Goel v. Coal. Am. Holding Co.*,
  2011 WL 13128299 (C.D. Cal. May 19, 2011) ............. 10, 11, 12

*Goldberg v. Cameron*,
  2015 WL 5316339 (N.D. Cal. Sept. 11, 2015) ................... 10

*Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*,
  865 F.3d 1237 (9th Cir. 2017) ................................. 20

*In re Berg Litig.*,
  293 F.3d 1127 (9th Cir. 2002) ..................... 1, 2, 22, 25

PLAINTIFFS' REPLY ISO MOTION TO REMAND

**TABLE OF AUTHORITIES (CONT'D)**

*In re Hanford Nuclear Reservation Litig.*,
   534 F.3d 986 (9th Cir. 2008) ................................ 1, 3

*Johnson v. Peralta Cmty. Coll. Dist.*,
   1997 WL 227903 (N.D. Cal. Apr. 28, 1997), *aff'd*, 142 F.3d 443
   (9th Cir. 1998) ............................................. 15

*Lawson v. Gen. Elec. Co.*,
   140 F. Supp. 3d 968 (N.D. Cal. 2015) ....................... 25

*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014) ........................... *passim*

*Lewis v. QVC, Inc.*,
   2017 WL 1423703 (C.D. Cal. Apr. 20, 2017) ........... 10, 11, 12

*Luevano v. Dawoodbhai*,
   2018 WL 2315954, at *2 (C.D. Cal. May 18, 2018) .......... 15, 16

*Machnik v. Buffalo Pumps Inc.*,
   506 F. Supp. 2d 99 (D. Conn. 2007) .......................... 22

*Maryland v. Soper*,
   270 U.S. 9 (1926) ........................................... 20

*Miotox LLC v. Allergan, Inc.*,
   2015 WL 2084493 (C.D. Cal. May 5, 2015) ...................... 4

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
   526 U.S. 344 (1999) ......................................... 11

*Nat'l Audubon Soc'y v. Davis*,
   307 F.3d 835 (9th Cir. 2002) ................................ 23

*Nesbiet v. Gen. Elec. Co.*,
   399 F. Supp. 2d 205 (S.D.N.Y. 2005) ......................... 22

*Noorazar v. BMW of N. Am., LLC*,
   2019 WL 442477 (S.D. Cal. Feb. 5, 2019) ................. 10, 12

*Novoa v. GEO Grp., Inc.*,
   2018 WL 4057814 (C.D. Cal. Aug. 22, 2018) ................... 24

*Ortiz v. Citibank, N.A.*,
   2018 WL 6930889 (C.D. Cal. Jan. 10, 2018) .............. 3, 8, 14

*Pac. N.W. Venison Producers v. Smitch*,
   1992 WL 613294 (W.D. Wash. Sept. 2, 1992) ................... 23

iii

**TABLE OF AUTHORITIES (CONT'D)**

*PAE Gov't Servs., Inc. v. MPRI, Inc.,*
  514 F.3d 856 (9th Cir. 2007) .................................. 8

*Parker v. Brown,*
  570 F. Supp. 640 (S.D. Ohio 1983) ............................ 5

*Quality Loan Serv. Corp. v. 24702 Pallas Way, Mission Viejo, CA 92691,*
  635 F.3d 1128 (9th Cir. 2011) ............................... 11

*Ramirez v. Cty. of San Bernardino,*
  806 F.3d 1002 (9th Cir. 2015) ............................... 11

*Rangel v. Bridgestone Retail Operations, LLC,*
  200 F. Supp. 3d 1024 (C.D. Cal. 2016) ....................... 10

*Rla v. Cape Cod Biolab Corp.,*
  2001 WL 1563710 (N.D. Cal. Nov. 30, 2001) ................... 15

*Snell v. Bell Helicopter Textron, Inc.,*
   107 F.3d 744, 746 n.1 (9th Cir. 1997).....................21, 22

*State Comp. Ins. Fund v. Superior Court,*
  184 Cal. App. 4th 1124 (2010) ............................... 13

*State National Ins. Co. v Khatri,*
  2013 WL 5183193 (N.D. Cal. Sept. 13, 2013) ................... 8

*Tenn. Valley Auth. v. Hill,*
  437 U.S. 153 (1978) ......................................... 23

*Thrash v. Cirrus Enters., LLC,*
  2017 WL 2645499 (N.D. Cal. June 20, 2017) .................... 6

*United Inv'rs Life Ins. Co. v. Waddell & Reed Inc.,*
  360 F.3d 960 (9th Cir. 2004) ................................. 6

*United States v. Lloyd,*
  807 F.3d 1128 (9th Cir. 2015) ............................... 15

*Valadez-Lopez v. Chertoff,*
  656 F.3d 851 (9th Cir. 2011) ................................. 8

*Walek v. Boeing Co.,*
  2016 WL 910150 (C.D. Cal. Mar. 9, 2016) ................... 6, 14

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR RELIEF FROM ISSUANCE OF SUMMONS

**TABLE OF AUTHORITIES (CONT'D)**

*Washington v. Monsanto Co.*,
  274 F. Supp. 3d 1125 (W.D. Wash. 2017).....................*passim*

*Washington v. Monsanto Co.*,
  738 F. App'x 554 (9th Cir. 2018) ...................... 2, 14, 25

*Watson v. Philip Morris Cos.*, Inc.,
  551 U.S. 142 (2007) ......................................... 18

*Winters v. Diamond Shamrock Chem. Co.*,
  901 F. Supp. 1195 (E.D. Tex. 1995), *aff'd,* 149 F.3d 387
  (5th Cir. 1998) ......................................... 23, 24

*Yearsley v. W.A. Ross Const. Co.*,
  309 U.S. 18 (1940).........................................24

**Statutes**

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq............. 5

Endangered Species Act, 16 U.S.C. § 1531(b) (1988).............. 23

28 U.S.C. § 1442(a) (2013)................................... 1, 3

28 U.S.C. § 1446 (2011)..................................... 8, 11

The Price-Anderson Act, 42 U.S.C. § 2210(n) (2006)......... *passim*

50 U.S.C. § 4557 (1952)................................... 23, 24

Cal. Civ. Proc. Code § 312.................................. 12

Cal. Civ. Proc. Code § 350.................................. 12

Cal. Civ. Proc. Code § 471.5(a)........................... 9, 12

Cal. Civ. Proc. Code § 472.................................. 9, 10

**Rules**

Cal. R. Ct. 3.110.......................................... 12

Fed. R. Civ. P. 12....................................... 1, 6

Fed. R. Civ. P. 15.......................................... 8

Fed. R. Evid. 701.......................................... 15

## I.        INTRODUCTION

Struggle as Defendant, The Boeing Company ("Boeing"), may to contrive a basis to claim federal court jurisdiction under either 28 U.S.C. § 1442(a), the federal officer removal statute, or 42 U.S.C. § 2210(n), the Price-Anderson Act,[1] this is a state law wildfire damage case, like the claims of over 1,900 plaintiffs pending in state court against co-defendants Southern California Edison Company and Edison International, and there is no federal jurisdiction.  Boeing's assertion of federal jurisdiction is based on its arguments: (1) that the Original Complaint is the operative pleading because "an amended complaint cannot be the operative complaint until it has been served";[2] and (2) that it has met its burden of showing that "Boeing's 'challenged acts' [causing or contributing to the spread of the Woolsey Fire] occurred because of what the federal government asked it to do, specifically test

/ / /

---

[1] Boeing tortures the non-operative complaint to support its argument that this is a Price-Anderson case or related to any government-mandated activity.  *Compare* Dkt. 33 at 10, 13, 24-25 *with* Dkt. 1-2 at ¶¶ 72-92, 112-29, 140-71, 179-95.  Under other circumstances, Boeing would no doubt bring a motion to dismiss any contamination claims based on *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  *Twombly* requires pleadings of specific facts to show that each element of the cause of action can be met.  The background information in the Original Complaint about the SSFL's commercial purpose and the fact that it did result in contamination of the land would not survive a Rule 12 motion if Plaintiffs did claim physical harm from radiation exposure and damages therefrom, as there are no allegations of levels of exposure to radiation in excess of federal limits, as is required for radiation related claims.  *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1003 (9th Cir. 2008).  Price-Anderson provides the exclusive cause of action for a radiation-based exposure claim.  *Id.* at 1009. Furthermore, Plaintiffs have not stated a claim under the Price-Anderson Act, as "[p]hysical harm to persons or property is . . . a jurisdictional prerequisite." *In re Berg Litig.*, 293 F.3d 1127, 1131 (9th Cir. 2002).  Plaintiffs' Original Complaint alleges only emotional harm.  Dkt. 1-2 at ¶¶ 146, 160.

[2] Dkt. 33 at 18 (emphasis omitted).

1

1  rocket engines . . . , build and operate nuclear reactors . . . ,

2  and remediate the contamination that resulted . . . ."[3]

3      Plaintiffs' Amended Complaint, filed on April 30, 2019, is the

4  operative complaint and contains only state law claims.[4]  There are

5  no federal officer ordered actions or omissions at Boeing's Santa

6  Susana Field Laboratory ("SSFL") property that required Boeing to

7  allow electrical infrastructure to fall into disrepair or permit

8  vegetation to spread uncontrolled so as to increase the risk of

9  fire.[5]  Further, there is no allegation of radiation-based personal

10  injury or property damage in any pleading, and no radiation-related

11  harm alleged in the operative pleading.[6]  Plaintiffs' case is not

12  based on the fact that SSFL is contaminated, but on Boeing's acts

13  and omissions related to causation of the Woolsey Fire.  The

14  operative complaint does not plead, and Plaintiffs will not offer

15  evidence of, any damages related to contamination or radiation

16  under the Price-Anderson Act.[7]  There is no federal radiation

17  contamination claim (the only claim available for radiation

18  injuries) and, therefore, there is no cause of action as to which

19  / / /

20

21  [3] Dkt. 33 at 24.
22  [4] Before service or any responsive pleading was filed to the Original Complaint, Plaintiffs amended to add three additional plaintiffs and clarify that their state law claims are unrelated to
23  any decades past federally-ordered activity on the SSFL.  *See generally* Dkt. 26-2 at Ex. A.
24  [5] *See Arness v. Boeing N. Am., Inc.*, 997 F. Supp. 1268, 1275-76 (C.D. Cal. 1998) (remanding where Boeing failed to show the
25  specific acts at SSFL underlying claims against it were done at government's behest); *Washington v. Monsanto Co.*, 274 F. Supp. 3d
26  1125, 1130 (W.D. Wash. 2017), *aff'd*, 738 F. App'x 554 (9th Cir. 2018) (remanding PCB cases where Monsanto failed to show specific
27  control over use).
[6] *Berg*, 293 F.3d at 1131 ("Physical harm to persons or property is
28  . . . a jurisdictional prerequisite.").
[7] *See* Dkt. 26-2 at Ex. A.

2

1  Boeing can offer a federal officer defense.[8]  Boeing provides

2  nothing that supports the assertion that the federal government

3  directed it to maintain electrical equipment or vegetation in

4  specific condition so as to increase risk of fire.

5      For the reasons set forth in Plaintiffs' Memorandum of Points

6  and Authorities in Support of Plaintiffs' Motion to Remand

7  ("Memorandum")[9] and below, Boeing's Notice of Removal ("Notice") is

8  ineffective.  It purports to remove on the basis of a superseded

9  pleading, which defect alone is grounds for remand.[10]  Further,

10  Boeing has failed to show that removal is proper under either 28

11  U.S.C. § 1442(a) or 42 U.S.C. § 2210(n) as to either pleading.[11]

12  Thus, the Court lacks subject matter jurisdiction and this action

13  must be remanded to state court.

14  **II.  STANDARD OF REVIEW**

15      Boeing does not dispute that the standard of review for

16  federal officer removal is found in *Leite v. Crane Co.*, 749 F.3d

17  1117 (9th Cir. 2014).  However, Boeing incorrectly asserts that

18  / / /

19  _____

20  [8] Pleading a radiation-based cause of action under Price-Anderson requires that Plaintiffs plead specific facts showing that their persons or property were contaminated above federal dose limits. *Hanford*, 534 F.3d at 1003.  The operative Amended Complaint does not mention radiation, and the Original Complaint does not allege any violation of federal dose limits or damage to person and/or property, required elements for Price Anderson recovery. *See generally* Dkt. 1-2; Dkt. 26-2 at Ex. A.

21

22

23

[9] *See generally* Dkt. 26-1.

24  [10] *Ortiz v. Citibank, N.A.*, 2018 WL 6930889, at *4 (C.D. Cal. Jan. 10, 2018) ("It is beyond dispute . . . that removal of a non-operative complaint is grounds for remanding a case . . . ."); *see also Borgman v. Insphere Ins.*, 2013 WL 1409921, at *1-4 (N.D. Cal. Apr. 8, 2013) (ordering remand where "service of the FAC on Defendants was not completed until sometime after the action was removed.").

25

26

27  [11] The superseded Original Complaint alleged only emotional harm based on fear of toxic contamination, and did not allege contamination above federal guidelines.  Dkt. 1-2 at ¶¶ 146, 160.

28

3

1    Plaintiffs make only a facial, not factual attack on its Removal.[12]

2     A facial attack accepts the truth of all of defendant's

3    allegations about its conduct and that of the government.[13]  Here,

4    Plaintiffs did not accept Boeing's statements and allegations as

5    true, insofar as Boeing claims that anything it offers shows that

6    the government controlled and directed Boeing's acts and omissions

7    which caused the Woolsey Fire.[14]  Boeing claims that the case law

8    requires that, to make a factual attack, "plaintiffs must introduce

9    evidence of *their own*," otherwise, Defendant has established

10   jurisdiction.[15]

11       Boeing quotes two district court cases to support this idea,

12   *Miotox LLC v. Allergan, Inc.*, 2015 WL 2084493 (C.D. Cal. May 5,

13   2015) and *Arutunian v. Mercedes-Benz USA, LLC*, 2018 WL 6617636

14   (C.D. Cal. Dec. 17, 2018), neither of which establish or even

15   suggest such a rule.  *Miotox* simply recites the definition of

16   factual attack, and does not suggest that the only way to make a

17   factual attack is for the moving party to offer some separate,

18   different, or independent evidence, other than what is found in

19   documents referred to by defendant in its notice of removal.  *See*

20   2015 WL 2084493, at *4.

21       Boeing quotes *Arutunian* as follows: "'[i]f only written

22   materials are submitted for the district court's consideration,

23   then the removing defendant need only establish a *prima facie* case

24

25   [12] Dkt. 33 at 15-16.
     [13] Dkt. 33 at 15 (citing *Leite*, 749 F.3d at 1121).

26   [14] *See generally* Dkt. 26-1.  Boeing fails to establish the required
     causal nexus between the activities that caused Plaintiffs' injury

27   and its actions performed at the direction of government authority.
      *Arness*, 997 F. Supp. at 1273-74; *Monsanto*, 274 F. Supp. 3d at

28   1130-31.
     [15] Dkt. 33 at 15-16 (emphasis added).

                                       4

1    to survive a motion to remand.'"[16]  The district court in *Arutunian*

2    gave no explanation of what it meant by written materials or prima

3    facie, and did not use that language in its discussion of the facts

4    and resolution of the case.[17]  In *Arutunian,* from the only

5    materials before it, the complaint, which itself expressly plead

6    the federal Magnuson-Moss Warranty Act and an attached lease

7    showing the federal jurisdictional limit was met, subject matter

8    jurisdiction was clear prima facie.  Nothing else was offered.[18]

9    *Arutunian* does not hold that where the materials before the court

10   do not show clear jurisdiction on their face, they nevertheless

11   provide a prima facie showing of jurisdiction.  A mere argument

12   that the documents demonstrate jurisdiction, if they do not, is not

13   sufficient.[19]

14       Boeing is urging the Court to ignore fundamental principles of

15   subject matter jurisdiction.  First, a federal court either has

16   subject matter jurisdiction or it does not.  "[S]ubject matter

17   jurisdiction . . . can never be waived . . . ."[20]  Also, the

---

18   [16] Dkt. 33 at 15.

19   [17] 2018 WL 6617636, at *1-3.  *Arutunian* cites *Parker v. Brown*, 570
20   F. Supp. 640, 642 (S.D. Ohio 1983), a removal case involving
     compliance with procedural rules on removal, not subject matter
     jurisdiction.  *Parker* expressly draws the distinction between a
21   review of subject matter jurisdiction and a procedurally defective
     removal: "[T]he fact that non-jurisdictional defects can be waived
22   indicates to us that once the removing party has made a *prima
     facie* case of having satisfied all procedural requirements, the
23   burden shifts to the party seeking remand to offer evidence
     rebutting that *prima facie* case."  *Parker*, 570 F. Supp. at 643.  It
24   denied remand and held any procedural defects were waived.  Subject
     matter jurisdiction was not at issue.  The question here is whether
25   there is subject matter jurisdiction, which cannot be waived or
     consented to by the parties.  *Gibson v. Chrysler Corp.*, 261 F.3d
26   927, 948 (9th Cir. 2001) ("Subject matter jurisdiction cannot be
     established by consent of the parties, and a lack of subject matter
27   jurisdiction is a non-waivable defect.").
     [18] *Arutunian*, 2018 WL 6617636, at *1-3.
28   [19] *See supra* note 17.
     [20] *Parker*, 570 F. Supp. at 642.

parties may not consent to subject matter jurisdiction.[21]  The law in the Ninth Circuit requires that the Court review the parties' extrinsic evidence to determine if, by a preponderance, it supports subject matter jurisdiction.[22]

"A 'factual' attack . . . contests the truth of [defendant's] factual allegations, usually by introducing evidence outside the pleadings."[23]  Plaintiffs here have contested the truth of Boeing's factual claims that any of its cherry-picked partial quotations from parts of documents it submitted (or self-serving, speculative, and vague declarations submitted with its Opposition) show, "prima facie," that the government controlled and directed its acts and omissions related to the cause of the Woolsey Fire.[24]  Plaintiffs do not allege that rocket testing, nuclear energy, or poor remediation of resulting contamination were causally related to the

/ / /

_____

[21] *Gibson*, 261 F.3d at 948.  A "district court ha[s] a duty to establish subject matter jurisdiction over the removed action *sua sponte*, whether the parties raised the issue or not." *United Inv'rs Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th Cir. 2004).  Furthermore, the lack of subject matter jurisdiction does not evaporate or become cured, even if the court processes an entire trial.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").
[22] *Leite*, 749 F.3d at 1121.
[23] *Id.; see also Walek v. Boeing Co.*, 2016 WL 910150, at *3 (C.D. Cal. Mar. 9, 2016) ("Plaintiffs raise a 'factual attack' on these allegations concerning federal officer jurisdiction. . . . [by] contest[ing] 'the truth of [defendant's] allegations regarding the existence of a colorable federal defense and the requisite causal nexus.'"); *Thrash v. Cirrus Enters., LLC*, 2017 WL 2645499, at *2 (N.D. Cal. June 20, 2017) ("Though Plaintiffs do not submit evidence outside the pleadings in support of their Motion, . . . they do generally 'contest the truth of [Defendants'] factual allegations.' *Leite*, 749 F.3d at 1122. Since Defendants have submitted evidence supporting removal jurisdiction in response to Plaintiffs' jurisdictional challenge, the Court need not limit its review to the pleadings, and will interpret Plaintiffs' motion as a factual attack on removal jurisdiction.").
[24] *See generally* Dkt. 26-1.

6

fire.[25]  Plaintiffs refer the court to evidence that Boeing, not the government, controlled day-to-day maintenance of electrical equipment and vegetation, and Boeing's negligence, not the government's, contributed to and/or caused the Woolsey Fire.[26] Under controlling law, because Plaintiffs make a factual challenge to Boeing's allegations, Boeing "must support its allegations with competent proof . . . [and] prov[e] by a preponderance of the evidence that the . . . requirements for removal jurisdiction have been met." *Leite*, 749 F.3d at 1122.  Boeing has failed to do so and, therefore, this Court should order remand.

## III. ARGUMENT

### A.   Plaintiffs' Amended Complaint Is the Operative Complaint

Boeing claims, "[a]t the time of removal—May 6, 2019—Plaintiffs' [unserved Original] Complaint, and not their unserved Amended Complaint, was the operative pleading in this case."[27] This is of central importance to Boeing because its entire basis for federal jurisdiction is premised on its rocket testing and radiation activities, which are not mentioned in the Amended Complaint.[28]

Liberal amendment of pleadings is generally encouraged in both state and federal court to correct or clarify claims or to add new

---

[25] *See generally* 26-2 at Ex. A; *see also* Dkt. 1-2.
[26] *See* Dkt. 26-1.
[27] Dkt. 33 at 16.
[28] *See* Dkt. 26-2 at Ex. A.  Boeing answered the Original Complaint and denies any offsite release of contamination from the fire.  *See* Dkt. 13 at 19.  Plaintiffs did not move to strike, as the "mere filing of the [Amended Complaint] rendered the Answer to the [prior] Complaint inoperative."  *Christiansen v. Lincoln Nat'l Life Ins. Co.*, 2010 WL 11515268, at *1, n.1 (C.D. Cal. Aug. 3, 2010) (emphasis omitted); *see also id.* at *1 ("The motion . . . pertains to an answer that was rendered inoperative . . . the Court finds that Plaintiff's motion to strike is moot.").

parties.[29]  There are significant differences between the Original

Complaint and the Amended Complaint which have practical

consequences in this mass tort action.  For example, the Amended

Complaint has three additional plaintiffs, not parties in the

Original Complaint.[30]  Since Boeing refuses to remove the case set

forth in the Amended Complaint,[31] the three additional plaintiffs

are in limbo.[32]

     The Court must also consider the reality that Plaintiffs are

not prosecuting any claims for radiation or contamination damages.

 They deny and reject any such claims and amended their Original

Complaint to drop those claims before removal.[33]  Their cases are

---

[29] "At the time a complaint is filed, the parties are often
uncertain about the facts and the law; and yet, prompt filing is
encouraged and often required . . . . As the litigation progresses,
and each party learns more about its case and that of its
opponents, some allegations fall by the wayside as legally or
factually unsupported. . . . We do not call this process sham
pleading; we call it litigation." *PAE Gov't Servs., Inc. v. MPRI,
Inc.*, 514 F.3d 856, 858-59 (9th Cir. 2007); *see also Valadez-Lopez
v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011) ("[A]n '"amended
complaint supersedes the original, the latter being treated
thereafter as non-existent."'"); *State National Ins. Co. v Khatri*,
2013 WL 5183193, at *6-7 (N.D. Cal. Sept. 13, 2013); Fed. R. Civ.
P. 15.
[30] *Compare* Dkt. 26-2 at Ex. A, ¶¶ 20-25 *with* Dkt. 1-2 at ¶¶ 20-24.
[31] 28 U.S.C. § 1446(d) ("[D]efendant . . . shall file a copy of the
notice with the clerk of such State court, . . . and the State
court shall proceed no further unless and until the case is
remanded.").
[32] Boeing's act of removal on a superseded pleading is procedurally
defective and cannot be the basis for jurisdiction over these
claims.  *Ortiz*, 2018 WL 6930889, at *4.  Moreover, due to the
procedural mess Boeing has created, Plaintiffs are unable to file a
second amended complaint adding a number of additional plaintiffs.
 Boeing is not going to be able to avoid dealing with the reality
of the Amended Complaint.  Even if Boeing led this Court into error
and it denied remand on the basis of the background language of the
inoperative Original Complaint (which pleading does not provide for
federal jurisdiction), Boeing will have to remove the Amended
Complaint for the additional plaintiffs.  Eventually, the Amended
Complaint will have to be dealt with by the Court, unless Boeing
admits jurisdiction is only proper in state court.
[33] *See supra* note 29.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR RELIEF FROM ISSUANCE OF SUMMONS

about the burn damage from the Woolsey Fire, which destroyed their homes and other property.[34]   The addition of contamination cleanup to the prayer for relief was corrected through amendment before Boeing removed.[35]   An exercise of federal jurisdiction over purely state law claims under the federal officer statute here would lead to absurd results and is not preferred federal policy.[36]

The parties agree that state law governs the issue here.[37] Boeing's argument for its claim that it properly removed on the unserved Original Complaint rather than the Amended Complaint, is that "California [has a] procedural rule that an amended complaint does not become operative unless it has been served."[38]   Boeing relies on California Code of Civil Procedure ("CCP") sections 471.5(a) and 472, and argues that "several cases . . . relied on these procedural rules to reject a plaintiff's unserved amended complaint as the operative complaint for removal purposes."[39] Section 471.5(a) states that "If the complaint is amended, . . . a copy . . . must be served . . . ."   Section 472 states: "A party may amend its pleading once without leave of the court . . . if the

---

[34] *See generally* Dkt. 26-2 at Ex. A.
[35] Plaintiffs want to be clear that they have no problem in principle trying these cases in federal court.  In some ways, there would be advantages to pursuing their claims without the incumbrances involved with prosecuting their case alongside over 1,900 other plaintiffs in state court.  However, Plaintiffs do not believe that there is a basis for subject matter jurisdiction and cannot consent to having their case before this Court.  *Gibson*, 261 F.3d at 948.  There is nothing nefarious going on here, as Boeing suggests.  *See* Dkt. 33 at 9.  Boeing should explain why it is so eager to be in federal court that it would push a radiation contamination claim that plaintiffs are not pursuing.
[36] *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 357 (1988) (concluding if federal claims are eliminated and efficiency is served, remand should be ordered in the court's discretion).
[37] *See* Dkt. 33 at 17.
[38] *Id.*
[39] *Id.*

9

amended pleading is filed and served no later than the date for filing an opposition to the demurrer or motion to strike."  Neither section states that an amended complaint must be served to supersede an earlier pleading, let alone an earlier *unserved* pleading.

Boeing cites *Lewis v. QVC, Inc.*, 2017 WL 1423703 (C.D. Cal. Apr. 20, 2017), *Rangel v. Bridgestone Retail Operations, LLC*, 200 F. Supp. 3d 1024 (C.D. Cal. 2016),[40] *Noorazar v. BMW of North America, LLC*, 2019 WL 442477 (S.D. Cal. Feb. 5, 2019), *Goldberg v. Cameron*, 2015 WL 5316339 (N.D. Cal. Sept. 11, 2015),[41] and *Goel v. Coal. Am. Holding Co.*, 2011 WL 13128299 (C.D. Cal. May 19, 2011) as interpreting these sections to require service of a filed amended complaint before it supersedes an unserved original complaint. None of these cases so hold, and none address the issue before the court here, namely, when there are two unserved pleadings prior to removal, which is the operative pleading.

*Lewis* and *Goel* denied remand motions in diversity cases.[42]  In both cases, the complaints had been served and the amended complaints were filed but served after notice of remand.[43]  *Lewis*,

/ / /

---

[40] Plaintiff in *Rangel* did not even mention its amended complaint, and argued remand based on the original complaint.  200 F. Supp. 3d at 1029 n.2 ("Plaintiff's Motion [to Remand] only addresses the facts and allegations in the Complaint, not the FAC. . . . Plaintiff does not mention that he filed an FAC.").  Thus, the issue of the operative complaint was not before that court.
[41] *Goldberg*, a copyright case with a history of several related actions being filed and dismissed, is distinguishable because it also involves a served complaint and an amended pleading unserved before removal.  In *Goldberg*, the court also dismissed the case with prejudice on the basis of res judicata.  *Goldberg*, 2015 WL 5316339, at *5.
[42] *Lewis*, 2017 WL 1423703, at *2; *Goel*, 2011 WL 13128299, at *8.
[43] *Lewis*, 2017 WL 1423703, at *1; *Goel*, 2011 WL 13128299, at *1.

10

1  which quotes and relies on *Goel*, first properly states the

2  governing rule:

3          Both Ninth Circuit and California law are clear that

4          an "amended pleading supersedes the original

5          pleading." . . . "[A]fter amendment the original

6          pleading no longer performs any function and is

7          'treated thereafter as non-existent.'"[44]

8      The *Lewis* Court then addresses a perceived gamesmanship

9  problem discussed in *Goel*, where plaintiff could file and serve a

10 complaint, then file an amended complaint without serving it.

11 Under this hypothetical, defendants would be precluded from

12 removing the original complaint because it would be superseded and

13 would not know to remove the operative amended complaint until the

14 30-day window closes:[45]

15          [A] plaintiff could "effectively prevent a defendant

16          from removing by filing and serving a complaint and

17 ─────────────────────

18 [44] *Lewis*, 2017 WL 1423703, at *2; *see also Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("It is well-established in our circuit that an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'"); *supra* note 29.

20 [45] Boeing accuses Plaintiffs of such "'gamesmanship' – [like] a plaintiff avoiding removal through unserved amendments." Dkt. 33 at 17.  Plaintiffs sent Boeing's general and litigation counsel a letter attaching courtesy copies of the original complaint, explaining they did not have summons yet. *See* Dkt. 37-1.  Boeing's litigation counsel responded saying they did not have authority to accept service.  It is Boeing who is engaging in gamesmanship by refusing to remove on the operative complaint, trying to manufacture jurisdiction where it does not exist, and attempting to cherry pick which complaint to remove.  28 U.S.C. § 1446(b) requires *service* of the complaint before the 30-day removal clock begins to run.  *Quality Loan Serv. Corp. v. 24702 Pallas Way, Mission Viejo, CA 92691*, 635 F.3d 1128, 1133 (9th Cir. 2011). Plaintiffs knew that defendants' time to remove would not be affected by the amended complaint, as the complaint was not served.  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service . . . .").

1    then immediately filing, without serving, an amended

2    complaint. . . .  The plaintiff could prevent

3    removal by waiting to serve the amended complaint

4    until the defendant's 30-day removal window after

5    service of the initial complaint had lapsed."  *Goel*,

6    2011 WL 13128299, at *6.  Such procedural

7    manipulation is unacceptable . . . ."[46]

8  *Goel* specifically did not involve the factual situation and legal

9  issue here.[47]

10    The negative results which *Lewis*, based on *Goel*,[48] imagines

11  and Boeing asserts are not possible when plaintiff files, but is

12  unable to serve a complaint.  The trigger on the 30-day removal

13

14

15  _____
[46] *Lewis*, 2017 WL 1423703, at *2-3.

16  [47] *Goel*, 2011 WL 13128299, at *2 ("Plaintiff has not made any
argument about (1) why the FAC was the operative complaint at the

17  time of removal or (2) why Coalition America's failure to attach
the FAC to the notice of removal rendered the removal defective. .

18  . .  Thus, Plaintiff has abandoned any argument that removal was
improper merely because Coalition America attached a non-operative

19  complaint to the notice of removal.").  Boeing also cites *Broadway
Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017), a

20  case involving post-removal amendment which is obviously
inapplicable here.  However, even *Broadway* recognized that post-

21  removal amendment may be permitted "in order to clarify
jurisdiction."  *Id.*

22  [48] *Noorazar* also has the same fact pattern and was decided on the
same reasoning.  *Noorazar*, 2019 WL 442477, at *2.  When the

23  complaint is served and the amended complaint not served, *Noorazar*
opined that CCP section 471.5, which requires service of an amended

24  complaint as a matter of course for notice, means that the original
complaint should be treated as functional and existent for removal,

25  until service of the amendment.  This requirement is not in 471.5,
and again *Noorazar* does not deal with two non-served pleadings.  An

26  original complaint must be served too.  Cal. R. Ct. 3.110(b).
Before service, however, filing of an original complaint tolls the

27  statute of limitations and it provides the basis for removal, among
other things.  Cal. Civ. Proc. Code §§ 312, 315; Dkt. 33 at 18.

28  Service is not a universal requirement for legal efficacy under
California law.

1    clock is not pulled until the initial complaint is formally

2    served.[49]  This makes all the difference.[50]

3        Boeing claims Plaintiffs' reliance on *State Comp. Ins. Fund v.*

4    *Superior Court*, 184 Cal. App. 4th 1124 (2010) is "misplaced."[51]  It

5    argues that "*State Comp.* did not address whether an *unserved*

6    amended complaint is the operative pleading."[52]  Again, Boeing

7    misses the point.  Here, the Original Complaint was not served;

8    both pleadings are on a procedural parity.  In *State Comp.*, the

9    California Court of Appeal reversed entry of summary judgment based

10   on the original complaint when an amended complaint had been filed.

11    The court stated repeatedly that the amended complaint rendered

12   the earlier pleading inoperative when filed and, in fact, the

13   heading of the relevant section in the Opinion is "*The Filing of*

14   *the FAC Rendered Onvoi's Motion for Summary Adjudication Moot*."[53]

15   The court stated: "Because there is but one complaint in a civil

16   / / /

---

17   [49] *See supra* note 45.

18   [50] *See* Dkt. 26-1 at 10-12.  Boeing criticizes *Borgman*, 2013 WL
     1409921, which deals with an unserved amended complaint superseding

19   the original complaint upon filing.  Dkt. 33 at 18.  *Borgman* has
     not been distinguished or criticized by any other court, and its

20   reasoning is based on several California cases.  *See* 2013 WL
     1409921, at *3.  Boeing also complains that despite not being able

21   to obtain summons, plaintiffs did not serve the complaint.  Dkt. 33
     at 19.  Boeing claims that "had [Plaintiffs] served the [Original]

22   Complaint soon after it was filed, a notice of removal likely would
     have been filed within 30 days – over 45 days before the Amended

23   Complaint was filed."  *Id.*  This makes no sense.  Plaintiffs sent
     Boeing a courtesy copy of the complaint.  *Id.* at 14.  Boeing knows

24   it could have filed Notice of Removal any time after filing, before
     service.  *Id.* at 18.  It made a strategic decision not to remove

25   and in the time period, Plaintiffs filed the Amended Complaint that
     superseded the former.  *Borgman*, 2013 WL 1409921, at *3.  In a

26   last-ditch effort at pleading federal jurisdiction, Boeing removed
     the Original Complaint before Plaintiffs were permitted to serve

27   the Amended Complaint.
     [51] Dkt. 33 at 19.

28   [52] *Id.*
     [53] *State Comp.*, 84 Cal. App. 4th at 1130.

13

1   action . . . , the filing of an amended complaint moots a motion

2   directed to a prior complaint."[54]

3       Thus, Boeing removed a superseded complaint which at best, if

4   it is not null, void, and "non-existent," is not the operative

5   complaint for the case, which includes other parties, filed in

6   state court at the time of remand.  That alone is grounds for

7   remand.[55]

8       **B.   Boeing Has Failed to Meet Its Burden Under the Federal**

9           **Officer Removal Statute**

10      For subject matter jurisdiction to apply, under any test, it

11  is Boeing's burden to identify the specific contractual provisions

12  or provide facts which demonstrate that the government controlled

13  the wrongful conduct claimed in the operative pleading, and it is

14  not enough to refer generally to lengthy contracts or make broad

15  statements about general control, especially when plaintiffs

16  challenge such claims.[56]  "'[W]here a defendant seeks removal

17  pursuant to the federal officer removal statute, "no determination

18  of fact is required but it must fairly appear from the showing made

19

20  [54] *Id.* at 1131 (citing several California state cases).
    [55] *Ortiz*, 2018 WL 6930889, at *4.
21  [56] *See* Dkt. 26-1 at 12-16; *Leite*, 749 F.3d at 1122 ("[Defendant]
    bears the burden of proving by a preponderance of the evidence that
22  the colorable federal defense and causal nexus requirements for
    removal jurisdiction have been met."); *Cabalce v. Thomas E.*
23  *Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 n.6 (9th Cir. 2015)
    ("The defendant 'bears the burden of proving by a preponderance of
24  the evidence that the colorable federal defense and causal nexus
    requirements for removal jurisdiction have been met.' . . . [and]
25  'if the existence of jurisdiction turns on disputed factual issues,
    the district court may resolve those factual disputes itself . . .
26  .'"); *Washington v. Monsanto Co.*, 738 F. App'x 554, 555 (9th Cir.
    2018) (submitting documents is not enough where those documents "do
27  not show that the government supervised or controlled" the
    challenged activity);  *Walek*, 2016 WL 910150, at *5 ("These
28  exhibits contain at least hundreds of pages. It is not the Court's
    task to 'scour the record' in search of competent evidence.").

14

that [the defendant's removal] claim is not without foundation and

is made in good faith."'"[57]  Boeing's own documents and

declarations demonstrate that the government did not exercise the

degree of supervision, or any control, over electrical equipment

and vegetation maintenance required to support subject matter

jurisdiction.  Even when challenged by Plaintiffs to identify any

such evidence and though Plaintiffs quote sections of the Boeing

documents to the contrary, Boeing's Opposition fails even to allege

that the government was in control of or provided any

specifications as to maintenance of electrical equipment or

vegetation.[58]

The documents Boeing submits in support of its Opposition and

Removal and the declarations from its employees, Mr. Rutherford,

Mr. Zeller, and Mr. Lenox, which deal entirely in conclusory

generalities, do not even mention government control and

supervision of electrical equipment maintenance and vegetation –

the conduct at issue in the Woolsey Fire damage, for which Boeing

bears the burden of proof.[59]  It does not "fairly appear from the

---

[57] *Luevano v. Dawoodbhai*, 2018 WL 2315954, at *2 (C.D. Cal. May 18, 2018) (alteration in original).
[58] *See generally* Dkt. 33; *see also Leite*, 749 F.3d at 1122.
[59] *Leite*, 749 F.3d at 1122; *Cabalce*, 797 F.3d at 732 n.6; *see also* Plaintiffs' Objections to Boeing's Evidence filed concurrently herewith; *Rla v. Cape Cod Biolab Corp.*, 2001 WL 1563710, at *5 (N.D. Cal. Nov. 30, 2001) ("[C]onclusory allegations are insufficient to satisfy [Defendant]'s burden of 'actually proving the facts to support jurisdiction, including the jurisdictional amount.' *Gaus*, 980 F.2d at 566-67."); *Johnson v. Peralta Cmty. Coll. Dist.*, 1997 WL 227903, at *6 (N.D. Cal. Apr. 28, 1997), *aff'd*, 142 F.3d 443 (9th Cir. 1998) ("Defendant correctly objects to [the] declaration to the extent that it contains legal conclusions."); Fed. R. Evid. 701; *United States v. Lloyd*, 807 F.3d 1128, 1155 (9th Cir. 2015) ("[T]estimony that investors did not understand the risks, that all telemarketers knew of and took advantage of this ignorance, and that telemarketers knew that investors never made any money, was . . . well beyond his own personal experience . . . .").

15

1  showing [Boeing] made" that the removal claim has proper

2  "foundation and is made in good faith."[60]

3    **1.   Boeing Was Not "Acting Under" Federal Officer**

4    **Directions in Regard to Electrical and Vegetation**

5    **Maintenance or Lack Thereof, Which Caused the**

6    **Woolsey Fire**

7    **a.   TCE Use**

8    Boeing claims, citing Zeller's declaration, that, in the

9  1960s,[61] NASA and the Department of Defense "required that Boeing

10 use TCE to clean and flush the rocket engines, and had officers on-

11 site to make sure Boeing complied."[62]  It cites Lenox's testimony

12 for the proposition that "use of TCE on the Site resulted in

13 contamination."[63]  Neither declarant testifies that TCE use caused

14 the Woolsey fire or had anything to do with it.  The contractual

15 obligations to use TCE they rely on were specifically rejected as a

16 basis for federal officer jurisdiction in a case involving TCE

17 contamination offsite.[64]  Plaintiffs are not claiming that TCE use

18 or disposal caused the fire or their injuries.

19    **b.   Radiation Contamination**

20    Mr. Rutherford claims that Boeing's use of radioactive and

21 toxic materials, was "closely supervised, controlled, and monitored

22 . . . on the Site."[65]  Boeing also cites to "one contract between

23 DOE and Boeing [that] makes clear that Boeing was to perform its

24 research activities 'in accordance with the direction and

25 _____
   [60] *Luevano*, 2018 WL 2315954, at *2.
26 [61] Dkt. 1-3 at 2.
   [62] Dkt. 33 at 21.
27 [63] *Id.*
   [64] *Arness*, 997 F. Supp. 1268; *see also Monsanto*, 274 F. Supp. 3d at
28 1130-31; Dkt. 26-1 at 15-16.
   [65] Dkt. 35 at ¶ 15.

1   instructions of the Contracting Officer.'"[66]  The contract

2   activities referenced in "ECF No. 1-8 at 466-67" (or anywhere else

3   in the contract) have nothing to do with government control of

4   electrical equipment, vegetation, or fire prevention.[67]  And

5   Rutherford did not show that Boeing's nuclear testing and use of

6   radiation had anything to do with the origin or spread of the

7   Woolsey Fire, or the damages caused thereby.[68]

8                   c.    **Remediation of Contamination**

9        Lenox and Rutherford claim that the contracts for remediation

10  of the contamination caused by rocket testing and nuclear

11  activities "imposed contractual cleanup standards for the Site,

12  [and] required Boeing to obey the directives of federal officers .

13  . . ."[69]  Boeing was the contractor for such work, but none of

14  Boeing's declarants explain how the government's directions on the

15  standards for cleanup of radiation and chemicals at the SSFL had

16  anything to do with maintenance of electrical equipment and

17  vegetation to reduce fire risk.

18       The closest Boeing gets to anything related to fire, is a

19  reference to the "Emergency Readiness Assurance Plan," ("Plan") and

20  / / /

21  _____
    [66] Dkt. 33 at 21 (emphasis omitted).
22  [67] *See generally* Dkt. 1-8.  Furthermore, this contract terminated
    in 1973, decades before the activities complained of.  *Id.* at 2.
23  [68] Boeing also cites *Boeing Co. v. Movassaghi*, 768 F.3d 832 (9th
    Cir. 2014), which held that a state attempt to set a higher
24  standard for cleanup of *radioactive* contamination was
    unconstitutional due to federal preemption.  *Movassaghi* has nothing
25  to do with government control of electrical equipment or
    vegetation.  In fact, the case says that the state and not the
26  federal government, despite the radiation and rocket testing
    contracts, controls cleanup of non-radioactive contamination.  *Id.*
27  at 836 ("[T]he California Department of Toxic Substances Control
    supervised the cleanup of chemical contamination under generally
28  applicable state law.").
    [69] Dkt. 33 at 21.

Rutherford's two sentence description of it.[70]  This document
generally requires Boeing to have a plan for emergencies.[71]  As
part of this Plan, Boeing prepared and submitted a plan on fire
protection.[72]  Boeing admits it submitted the Plan and the
government relied on Boeing to carry it out.[73]  Government approval
of a plan by a contractor, whom it relies on to carry out the plan
is not a basis for federal officer jurisdiction.  *Cabalce*, 797 F.3d
at 726 ("[Defendants] provided the government with detailed safety
parameters as part of the plan, not the other way around. . . .").

This same contract also required Boeing to follow state laws
and regulations.[74]  Boeing had a duty to avoid causing a wildfire
on its property independent of any government contract, and
compliance with law and regulations is not a basis for federal
officer jurisdiction.  *Watson v. Philip Morris Companies*, Inc., 551
U.S. 142, 153 (2007) ("The assistance that private contractors
provide federal officers goes beyond simple compliance with the law
and helps officers fulfill other basic governmental tasks.").

Like the contracts attached to its Notice of Removal, the
contracts submitted by Boeing in support of its Opposition show
that Boeing (under state law) was in charge of anything that might

/ / /

/ / /

---

[70] Dkt. 33 at 22; Dkt. 35 at ¶ 27.  Rutherford does not claim that
DOE had any actual control or supervision over the contents of this
Plan, only that "DOE required Boeing to prepare" it.  Dkt. 35 at ¶
27.
[71] Dkt. 1-10 at 17; *see also* Dkt. 26-1 at 25.
[72] Dkt. 1 at ¶¶ 26-27.
[73] *Id.*; Dkt. 33 at 22.
[74] Dkt. 1-10 at 62 ("The contractor is required to comply with all
environmental laws, regulations, directives, orders, and procedures
. . . . This includes . . . compliance with applicable federal,
state and local laws and regulations, permits, [etc.] . . . .").

18

1   relate to a fire, not the federal government.[75]  Thus, Boeing has

2   not made any showing sufficient to justify that it was "acting

3   under" the directions of a federal officer in relation to any

4   conduct related to the damages from the Woolsey Fire.

5               2.   **Boeing Has Failed to Establish Causal Nexus Between**

6                    **Its Contractual Duties and Its Failure to Maintain**

7                    **the SSFL In Safe Condition**

8        Boeing admits that it must show that "'the challenged acts

9   "occurred because of what [it was] asked to do by the

10  Government."'"[76]  It claims that the testing, radiation activities,

11  and remediation, which the government asked it to do, have a causal

12  nexus with the Woolsey Fire.[77]  Boeing does not show how these

13  activities had anything to do with the fire.[78]  Boeing asserts that

14  _____

15  [75] *See* Dkt. 35-1 at 75 ("This task constitutes the site wide safety
    program for this contract. . . . Develop a program directed at
    ensuring compliance with DOE requirements and other

16  applicable state and local rules and regulations . . . ."); *id.* at
    68 ("These operations are subject to DOE ES&H Directives for the

17  ETEC Final Closure contract, which are listed in Attachment VIII
    (herein referred to as DOE Orders), and all applicable federal,

18  *state and local regulations and requirements*.") (emphasis added);
    Dkt. 34-3 at 19 ("Nothing contained in this clause shall relieve

19  the Contractor from complying with applicable Federal, State, and
    local laws, codes, ordinances, and regulations (including the

20  obtaining of licenses and permits} in connection with hazardous
    material . . . .").

21  [76] Dkt. 33 at 24.
    [77] *Id.*

22  [78] *See id.*; *supra* notes 59-75 and accompanying text.  Boeing again
    asserts that Plaintiffs' inoperative complaint sought damages from

23  radiation.  This argument is covered above.  *See supra* note 1.  The
    Original Complaint does not allege that any of Boeing's activities

24  directed by the government involving radiation, toxic chemicals, or
    remediation had anything to do with causing the fire that destroyed

25  their homes.  The Original Complaint, which was amended, alleged
    that the fire starting on Boeing's contaminated property could

26  spread contamination off site, the possibility of which caused
    Plaintiffs emotional distress.  *See* Dkt. 1-2 at ¶¶ 146, 160.

27  Initiating a fire that incidentally spreads contamination does not
    implicate the activities directed by the government.  *See Arness*,

28  997 F. Supp. at 1274-75; *Monsanto*, 274 F. Supp. 3d at 1130-31;
    *Cabalce*, 797 F.3d at 728.  Boeing cites the Supreme Court in

                                    19

1  "Plaintiffs try to defeat the nexus prong by . . . relating [their

2  allegations] only to the cause of the fire . . . ignor[ing] that

3  '[i]n asserting whether a causal nexus exists, [courts] credit the

4  defendant's theory of the case.'  *Leite*, 749 F.3d at 1124."[79]

5  However, *Leite* makes clear that defendant's theory cannot be a

6  fabricated straw man.  It describes defendant's theory it credits

7  as follows: "the very act that forms the basis of plaintiffs'

8  claims—[defendant]'s failure to warn about asbestos hazards—is an

9  act that [defendant] contends it performed under the direction of

10  the Navy."  749 F.3d at 1124.[80]  Boeing has offered no basis for a

*Maryland v. Soper*, 270 U.S. 9, 33 (1926).  *Soper*, a criminal case
involving state prosecution of a federal marshal who claimed he was
acting as part of his job, was remanded to state court on mandamus.
*Soper* requires that the "acts . . . in performance of . . .
official duty constitute the basis . . . of the state [lawsuit]."
*Id.*  Boeing has not met that burden of proof.
[79] Dkt. 33 at 25 (emphasis omitted).
[80] *See also Goncalves ex rel. Goncalves v. Rady Children's Hosp.
San Diego*, 865 F.3d 1237, 1245 (9th Cir. 2017) ("The 'very act'
that forms the basis for challenging the lien—seeking subrogation—
'is an act that [the Blues] contend[ ] [they] performed under the
direction of [federal officers].'"); *cf. Cabalce*, 797 F.3d at 728
("[T]he contract defines [defendant's] duties in handling hazardous
and dangerous materials in general terms and [defendant] points to
no contractual provisions or specifications from a federal officer
relevant to its destruction of the seized fireworks.").  Boeing
criticizes *Arness*, 997 F. Supp. 1268, in which the court found no
causal nexus between Boeing's contamination of the SSFL and its
required use of TCE to clean rocket engines under federal contract.
*Id.* at 1275.  Boeing asserts that "*Arness* was decided . . . before
the 2011 amendments to § 1442," is now "entirely inconsistent with
the Ninth Circuit's current doctrine," and "irrelevant here."  Dkt.
33 at 25.  *Arness* has been cited as current law in ten cases and
ten secondary sources since the 2011 amendments, and it continues
to be treated as proper authority for its discussion of the
required showing under the statute.  *See Monsanto*, 274 F. Supp. 3d
at 1130-31 ("In this case, like in *Arness,* the government did not
oversee or specify *how* Monsanto was to perform the activities that
form the basis for Washington's claims . . . . Accordingly, even if
the government contracted for Monsanto's PCBs, the Court cannot say
that Monsanto was 'acting under' the federal agency where the
government did not direct Monsanto to produce and promote PCBs *in a
particular way*.") (emphases in original).  Plaintiffs' reference to
presumption against removal in *Arness* was not the only or even
primary reason for Boeing's failure to establish causal nexus, and

20

1  connection between any government directed act and the harm

2  plaintiffs allege.[81]

3         **3.   Boeing Has Asserted No Colorable Federal Defenses**

4         Boeing has asserted four defenses – the government contractor

5  defense, federal preemption of state law, the Defense Production

6  Act, and derivative sovereign immunity – but fails to show that any

7  are colorable.[82]

8              **a.   The Government Contractor Defense**

9         Boeing claims a colorable government contractor defense based

10 on the same conduct it raises to support the other elements of the

11 statute.[83]  But those allegations do not suffice for the government

12 contractor defense, any more than they do for the "acting under" or

13 "causal nexus" requirements.[84]  Further, there is an additional

14 requirement here that the contract be a military one.  Boeing

15 disputes this, citing *Anchorage v. Integrated Concepts & Research*

16 *Corp.*, 2013 WL 6118485, at *7 (D. Alaska Nov. 21, 2013).[85]

17 *Integrated Concepts*' suggestion was expressly rejected by the Ninth

18 Circuit in *Cabalce*:

19              [I]n *Integrated Concepts*, the district court opined

20              that "the government contractor defense could

21              plausibly be invoked by a contractor hired by a

22              federal civilian agency to design and construct a

23              local infrastructure project." . . . However, our

24 the result would have been the same.  *Id.; see* Dkt. 26-1 at 14-16,
   23-26.
25 [81] *See supra* notes 59-60 and accompanying text.
   [82] *Leite*, 749 F.3d at 1122 ("[Defendant] bears the burden of
26 proving by a preponderance of the evidence . . . the colorable
   federal defense . . . .").
27 [83] Dkt. 33 at 26-28.
   [84] *See supra* notes 61-81 and accompanying text.
28 [85] Dkt. 33 at 27-28.

PLAINTIFFS' REPLY ISO MOTION TO REMAND

1    binding precedent has not reached a similar

2    conclusion.  *See Snell*, 107 F.3d at 746 n. 1.[86]

3 Boeing also claims that the military contract need not be in force

4 at the time of the fire, citing two foreign district courts,

5 *Machnik v. Buffalo Pumps Inc.*, 506 F. Supp. 2d 99, 103 (D. Conn.

6 2007) and *Nesbiet v. Gen. Elec. Co.*, 399 F. Supp. 2d 205, 212

7 (S.D.N.Y. 2005).[87]  Both cases are asbestos cases involving

8 military contracts in effect at the time of plaintiffs' exposure.

9    Boeing refers to one "directive" from an Air Force Colonel in

10 1961, concerning TCE as the basis for its claim of a military

11 contract related to the conduct alleged by Plaintiffs.  It does not

12 attach any military contracts, nor does it even allege that it had

13 a military contract in force at the time of the fire (or even in

14 the last few decades).[88]  There is no plausible government

15 contractor defense.[89]

16        **b.   Federal Preemption**

17    Boeing claims it has a colorable defense of federal preemption

18 based on the Price-Anderson Act, citing the legal standard in

19 Price-Anderson cases.[90]  Plaintiffs allege no radiation-based harm

20 to person or property, so the Act does not apply.[91]

21
---
[86] *Cabalce*, 797 F.3d at 731 n.5.

22 [87] Dkt. 33 at 27.  It concedes that the "the contract need . . . be
in force at the time of the challenged conduct," but seems to

23 dispute that the challenged conduct was causing the Woolsey Fire.
*Id.*  This argument is wrong as all of Plaintiffs' claims and

24 damages arise from the lack of maintenance and control in proximity
to the fire.  *See generally* Dkt. 26-2 at Ex. A.

25 [88] Dkt. 33 at 27.
[89] Even if there were a government contract in effect at the time

26 of the ignition of the fire or close to it, none of Boeing's
contracts deal with government control of electrical equipment or

27 vegetation maintenance.  *See supra* notes 61-75 and accompanying
text.

28 [90] Dkt. 33 at 28-30.
[91] *See supra* note 1; *Berg*, 293 F.3d at 1131.

1    Boeing also asserts "Plaintiffs' claims are preempted to the
2    extent they seek to impose vegetation management obligations on
3    Boeing that would conflict with the [Endangered Species Act]'s
4    mandate to conserve protected species," citing *Tenn. Valley Auth.*
5    *v. Hill*, 437 U.S. 153, 173 (1978); *Pac. N.W. Venison Producers v.*
6    *Smitch*, 1992 WL 613294, at *7 (W.D. Wash. Sept. 2, 1992); and *Nat'l*
7    *Audubon Soc'y v. Davis*, 307 F.3d 835, 851 (9th Cir. 2002).[92]   None
8    of those cases stand for the proposition that wildfire prevention
9    violates the Endangered Species Act.  Boeing does not explain how
10   causing the fire which burned its property and everything on it was
11   in an effort to protect endangered species.[93]   There is no
12   colorable defense that the ESA preempts Plaintiffs' state law
13   claims and Boeing cite no authority for this claim.

14                    **c.    Defense Production Act**

15   Boeing argues that "[b]ecause Plaintiffs' claims allege
16   contamination which resulted from Boeing's performance under . . .
17   rated contracts, the DPA provides an affirmative defense."[94]   The
18   DPA is only applicable to conduct "resulting directly or indirectly
19   from compliance with a rule, regulation, or order issued pursuant
20   to this chapter . . . ."  50 U.S.C. § 4557.  For all the reasons
21   the government contractor defense is not colorable, neither is the
22   DPA.[95]   Boeing has thus failed to raise a colorable defense under
23   the Defense Production Act.[96]

24   _____
     [92] Dkt. 33 at 30.
25   [93] In fact, the DOE's Biological Assessment charges Boeing with
     preventing wildfire to protect sensitive habitat and species.  *See*
26   Exhibit 1 to the Declaration of Suzelle M. Smith, filed
     concurrently herewith; Dkt. 26-1 at 28.
27   [94] Dkt. 33 at 31.
     [95] *See* Dkt. 26-1 at 28-29.  Boeing cites *Winters v. Diamond*
28   *Shamrock Chem. Co.*, 901 F. Supp. 1195, 1202 (E.D. Tex. 1995),
     *aff'd,* 149 F.3d 387 (5th Cir. 1998), claiming that it holds that

                                    23

### d. Derivative Sovereign Immunity

Boeing asserts that its "actions on the Site were performed pursuant to validly conferred authority and direction of the United States government. . . . therefore[, it] has a colorable defense that derivative sovereign immunity bars Plaintiffs' claims."[97]  It does not dispute that this defense is inapplicable to Plaintiffs' negligence claims.[98]  It also does not identify any precise government specifications to which it was adhering as to electrical infrastructure or vegetation management on the SSFL,[99] and therefore cannot assert a plausible entitlement to derivative sovereign immunity.[100]

/ / /

---

whenever there is a "DO" contract, there is a colorable DPA defense.  Dkt. 33 at 31.  The Fifth Circuit in *Winters* expressly declined to reach the DPA defense.  *Winters*, 149 F.3d at 401. Boeing has cited no case holding that merely having a DO contract provides a defense against conduct not related to the contract. *See* Dkt. 33 at 31.  Boeing also cites *Arness* in support of its DPA defense.  *Id.  Arness* reasoned that a claim of government direction to use TCE, where exposure to TCE was the basis of the claim, would provide a defense to use of TCE.  However, the court also found that federal officer removal did not apply because the use of TCE was not the basis for the harm – the disposal of the TCE was.  997 F. Supp. at 1274-75.  Here, Plaintiffs' claims are not related to TCE whatsoever.  *See* Dkt. 26-2 at Ex. A.  Therefore, there is no colorable DPA defense.  *See* 50 U.S.C. § 4557; *Monsanto*, 738 F. App'x at 555.
[96] *Anderson v. Hackett*, 646 F. Supp. 2d 1041, 1053 (S.D. Ill. 2009) ("Although [defendants] need not prove they will prevail on the defense, they at least have to show that they are entitled to raise it.").
[97] Dkt. 33 at 31-32.
[98] *Id.* at 32.
[99] *Id.* at 32-33.
[100] *Cabalce*, 797 F.3d at 732 ("We have held that derivative sovereign immunity, as discussed in *Yearsley*, is limited to cases in which a contractor 'had no discretion in the design process and completely followed government specifications.'"); *Novoa v. GEO Grp., Inc.*, 2018 WL 4057814, at *3 (C.D. Cal. Aug. 22, 2018) ("[T]he Court DENIES Defendant's motion on the issue of derivative sovereign immunity under *Yearsley*."); *see also* Dkt. 26-1 at 20-21, 29-30.

24

1         **C.**    **As a Matter of Law, the Price-Anderson Act is**

2                 **Inapplicable Here, Where No Radiation-Based Bodily Injury**

3                 **or Property Damage Has Been Claimed**

4         The Price-Anderson Act does not apply where there have been no

5 allegations of bodily injury or property damage. *Berg*, 293 F.3d at

6 1131 ("Physical harm to persons or property is . . . a

7 jurisdictional prerequisite.").[101]  Neither complaint filed in this

8 matter has alleged either of these types of damage.[102]  Thus, the

9 Price-Anderson Act cannot apply.

10 **IV.**  **CONCLUSION**

11         For the foregoing reasons, Plaintiffs' motion should be

12 GRANTED and the Court should order remand and payment by Defendant

13 Boeing of Plaintiffs' attorneys' fees and costs.[103]

14

15 Dated: July 8, 2019                 Respectfully submitted,
                                     HOWARTH & SMITH

16

17                                      SUZELLE M. SMITH

18

19                         By:  <u>/s/ Suzelle M. Smith</u>

20                                      Suzelle M. Smith
                                     Howarth & Smith

21                                      523 West Sixth Street, Suite 728
                                     Los Angeles, California 90014

22                                      Telephone: (213) 955-9400
                                     Facsimile: (213) 622-0791

23

24 [101] *See* Dkt. 33 at 32-33.  The sole case Boeing cites, *Lawson v.*
*Gen. Elec. Co.*, 140 F. Supp. 3d 968, 970 (N.D. Cal. 2015), involved

25 bodily injury, specifically, "brain degeneration with dementia,
allegedly as a result of repeated exposure to excessive amounts of

26 radiation."
[102] The operative Amended Complaint alleges no radiation-based harms

27 whatsoever.  *See* Dkt. 26-2 at Ex. A.  The inoperative Original
Complaint alleged only radiation-based emotional distress.  Dkt. 1-

28 2 at ¶¶ 146, 160.
[103] *See* Dkt. 26-1 at 30.

PLAINTIFFS' REPLY ISO MOTION TO REMAND

ssmith@howarth-smith.com

Attorneys for Plaintiffs
Andrew von Oeyen, et al.

PLAINTIFFS' REPLY ISO MOTION TO REMAND